APPLEGATE & · Others *v.* LEXINGTON & CARTER COUNTY MINING COMPANY & Others.

ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE DISTRICT OF KENTUCKY.

Argued March 4, 1886.—Decided March 15, 1886.

When an ancient deed forms part of the original papers in a suit in a court of record to determine the title to land to which the deed relates, the record of the case is admissible against persons who are not parties or privies to the suit in order to prove the antiquity of the deed and to account for its custody.

An ·ancient, uncontradicted, and apparently genuine certificate of a recorder that a deed was recorded in a specified year long gone by, indorsed upon the original deed, is competent and sufficient evidence that the deed was put on record in the year named. *Stebbins* v. *Duncan,* 108 U. S. 32, affirmed.

When it appears that a deed is at least thirty years old, and that it is found in proper custody, and possession under it is shown, or other equivalent corroborative proof of authenticity, the deed may be admitted in evidence.

The act of the Legislature of Kentucky, of December 19, 1795, " to establish District Courts in this Commonwealth," conferred upon such a court jurisdiction over suits to foreclose mortgages upon real, estate situated within its territorial jurisdiction.

When a court of general jurisdiction, empowered by statute to acquire by constructive notice jurisdiction over rights of non-resident defendants in property within its jurisdiction, takes jurisdiction of a cause involving such rights, after ordering service of notice upon an absent defendant in the manner required by the statute and after the lapse of the requisite time for service, and adjudges the case, it will be presumed that every step necessary to obtain jurisdiction has been taken, unless the statute requires evidence of it to appear in the record.

This suit was in the nature of an action of ejectment to recover possession of a tract of land formerly in Mason County, but now in Greenup, Carter, and Boyd Counties, in Kentucky. The plaintiffs in error were the plaintiffs in the Circuit Court. They alleged in their petition that they were the lineal heirs of Carey L. Clark, who died seized of a tract of eight thousand three hundred and thirty-four acres, part of a tract of eighteen thousand acres, granted by patent from the Commonwealth of Virginia, dated April 21, 1792, to Charles Fleming, from whom their ancestor, Carey L. Clark, derived title by a regular chain of conveyances; that the plaintiffs were the owners, and entitled to the possession of the land sued for ; and that the defendants had unlawfully entered upon and unlawfully withheld possession of the same.

The defendants, by their answers, denied these allegations, and averred that they were seized of the premises by paramount title. The answers were traversed by the plaintiffs' reply.

There was a jury trial. The plaintiffs, to sustain the issue on their part, offered in evidence the following documents as links in their chain of title :

1. A copy, duly certified from the land office of the State of Kentucky, of the patent from the State of Virginia to Charles Fleming, for the tract of land of which the land in controversy was originally a part.

2. A copy of the will of Charles Fleming, devising a moiety of said tract of land to William Fleming, John Bernard, Jr., and Richard Bernard, as trustees.

3. A copy of a deed from Samuel Sackett and wife to Joseph Conkling and others, dated August 29, 1795, for the particular land in controversy in this case, together with certain other tracts that had been patented by the State of Virginia to Charles Fleming.

4. A copy of a mortgage from Joseph Conkling and others, the grantees above named, to Samuel Sackett; the grantor above named, conveying the same lands as above, and dated August 29, 1795.

5. A copy of a deed from William Fleming and the Bernards, trustees as above under the will of Charles Fleming, to John Bryan, conveying to Bryan the lands devised to them by the will of Fleming, and dated December 31, 1796.

6. The original of the deed last named.

7. A copy of a deed from John Bryan and wife to Samuel Sackett, dated January 28, 1797, conveying the same land conveyed to Bryan by deed last above named.

8. The original of the deed last above named.

9. The original of a deed from Charles Fleming, dated August 8, 1794, to John and William Bryan, conveying to them 13,300 acres of the land that had been patented to said Charles Fleming and being part of the 18,000 acre tract, of which tract the land in controversy is also a part.

10. A certified copy from the Mason County Circuit Court of the record in the case of *Carey L. Clark* v. *Joseph Conkling and others,* in which Clark, as the assignee of the above mentioned mortgage of Joseph Conkling and others to Samuel Sackett, brought suit to foreclose the same.

It was shown that a short time before the trial in the Circuit Court, deeds 6, 8, and 9 were discovered in the office of the clerk of the Circuit Court of Greenup County, Kentucky,

among the original papers in a suit brought there in 1816 to quiet title to part of the land conveyed by the deed of William Fleming and the Bernards to John Bryan. The deeds were produced by the clerk in obedience to a subpœna *duces tecum.*

The court admitted in evidence the first four of the documents above mentioned. All the others were rejected, namely, the original and the copy of the deed from William Fleming and the Bernards to John Bryan, the original and the copy of the deed from Bryan to Sackett, the original of the deed from Charles Fleming to John and William Bryan, and the copy of the record from the Mason County Circuit Court in the case of *Clark* v. *Conkling and others.*

The court having excluded these documents, the plaintiffs were unable to trace title to themselves for the premises in controversy; thereupon the jury, under the instruction of the court, returned a verdict for the defendants, upon which the court rendered judgment, and the plaintiffs sued out this writ of error.

*Mr. David W. Armstrong* for plaintiffs in error. *Mr. W. W. Helm* was with him on his brief. *Mr. N. T. Crutchfield,* also for plaintiffs in error, submitted on his brief.

*Mr. Edward F. Dulin* and *Mr. John F. Hager,* for defendants in error, submitted on their brief.

I. A copy of a deed is admissible as evidence only when acknowledgment or proof thereof is legally sufficient to entitle it to record. *Edwards* v. *Hannah,* 5 J. J. Marsh. 117; *Winlock* v. *Hardy,* 4 Littell, 272; *Taylor* v. *Bush,* 5 T. B. Mon. 84; *Harris* v. *Price,* 14 B. Mon. 414; *Carpenter* v. *Dexter,* 8 Wall. 513; *Carter* v. *Champion,* 8 Conn. 549; *DeWitt* v. *Moulton,* 17 Maine, 418; *Tilman* v. *Cowand,* 12 Sm. & Marsh. 262; *Kerns* v. *Swope,* 2 Watts, 75.

II. Mere antiquity of a deed is not sufficient to entitle it to be read as evidence; nor can the record of it, against one not a party, be received as corroborating proof of its execution. *Davis* v. *Wood,* 1 Wheat. 6; *Tappan* v. *Beardsley,* 10 Wall. 427; *Owings* v. *Hull,* 9 Pet. 607; *Fenwick* v. *Macy,* 2 B.

Mon. 469; *Beckwith* v. *Marryman*, 2 Dana, 371; *Samuels* v. *Hall*, 9 B. Mon. 374; *Sargeant* v. *State Bank of Indiana*, 12 How. 371; *Lewis* v. *Robards*, 3 T. B. Mon. 406; *Crowder* v. *Hopkins*, 10 Paige, 183; *Staring* v. *Bowen*, 6 Barb. 109; *Jackson* v. *Blanshan*, 3 Johns. 292; *Willson* v. *Betts*, 4 Denio, 201; *Clark* v. *Owens*, 18 N. Y. 434; *Ridgley* v. *Johnson*, 11 Barb. 527.

III. The Washington District Court had no power to hear and determine the cause. This is the test of jurisdiction, *Grignon's Lessee* v. *Astor*, 2 How. 338; to be determined by statute, not by common law or usage. *Dunn* v. *McMillen*, 1 Bibb, 409.

The act in question is that of 1796, Vol. I. Morehead & Brown's Statutes, 91, 94, and is directory of the method of proceeding in courts of equity against absent debtors or other absent defendants. It is evident that Clark's suit was brought and attempted to be maintained under the fourth section of this act. As we read and understand the first section, it authorized proceedings against absent defendants only in cases where debts were due them or their effects were in the hands of some one resident of Kentucky, and was restricted in this application to choses in action and other personal property. The second and third sections refer alone to the methods of procedure in cases authorized by the first. The fourth section, in like manner, was restricted in its application to personalty, and is to be construed as regulating proceedings on attachments against absconding debtors. Persuasive evidence in favor of such construction is found in the history of legislative enactments following the act of 1796. The act of 1800 (p. 94) authorized a resident joint tenant to sue for an adjustment of any claim to land held in joint tenancy. The act of 1802 was to permit a suit in chancery to obtain a division of lands against absent and unknown heirs. The act of 1815 (p. 97) enlarged the application of the act of 1802, but not until 1827 (see act, p. 98) was there any law of Kentucky by which the real estate of absent defendants could be subjected to sale for their debts. See *Hare* v. *Bryant*, 7 J. J. Marsh. 375.

IV. The record is void because the facts essential to the ex-

ercise of the jurisdiction do not appear therein. Section 2, act of 1796, I., M. & B. Stat. Ky. 92, prescribes that the court shall appoint some day in the next succeeding term for the absent defendant, or defendants, to enter his or their appearance and give security for performing the decree; a copy of which is directed to be forthwith published in the Kentucky Gazette or Herald, and continued for two months successively, and further, shall also be published on some Sunday, immediately after divine service, in such meeting-house as the court shall direct; and another copy shall be posted at the front-door of the court-house. The failure to appear and give security, authorized the court to take such proof as the complainant should offer; and if there-upon satisfied, to order the bill taken as confessed, and decree further, etc. In terms the orders conform to the statutory requirement aforesaid. The record produced contains no evidence of the fact of publication, not so much as reciting formally the existence of jurisdictional facts. The entire pro-ceeding, it appears, was wholly *ex parte*. As in *Galpin* v. *Page*, 18 Wall. 350, presumption of service ordinarily arising from the existence of a judgment cannot be raised in favor of this record. Also see *Hart* v. *Grigsby*, 14 Bush, 542; *Green* v. *Breckenridge*, 4 T. B. Mon. 541; *Blight* v. *Banks*, 6 T. B. Mon. 192; *Brownfield* v. *Dyer*, 7 Bush, 505; *Long* v. *Montgomery*, 6 Bush, 394; *Grigsby* v. *Barr*, 14 Bush, 333.

MR. JUSTICE WOODS delivered the opinion of th e court. After stating the case as above reported, he continued:

We shall first consider the exclusion of the original deed from Fleming and the Bernards to John Bryan, and the origi-nal deed from John Bryan to Samuel Sackett. We are of opinion that they should have been admitted in evidence. They have been certified to and inspected by this court. Their appearance affords strong evidence of their genuineness and antiquity, and they are free from any badge that would excite suspicion of fraud or forgery. In support of their genuineness it was shown that a short time before the trial in the Circuit Court they were discovered by one of the plaintiffs' attorneys

in the office of the clerk of the Circuit Court of Greenup County, Kentucky, among the original papers of a suit in that court brought by one *James Hughes* v. *The Heirs of Thomas Shore*, on July 15, 1816, to quiet his title to sixteen thousand acres of land in Greenup County, part of the lands conveyed by the deed of William Fleming and the Bernards to John Bryan. The deeds and the original papers in that suit were produced by a clerk of the Greenup Circuit Court in obedience to a subpœna *duces tecum.* The record of this case was admissible against persons not parties or privies, to prove the collateral fact of the antiquity of the original deeds offered in evidence and to account for their custody. *Barr* v. *Gratz*, 4 Wheat. 213, 220.

The bill of Hughes averred that he derived title under the patent to Charles Fleming, and by virtue of the devise in his will to William Fleming and the Bernards, and the deeds of William Fleming and the Bernards to John Bryan, and of John Bryan to Samuel Sackett. The complainant Hughes offered by his bill " to produce said patent and deeds showing the deduction of title in proper time, or whenever the court should require it." The two deeds mentioned in the bill of complaint filed by Hughes correspond with and appear to be the two original deeds, namely, the deed from William Fleming and the Bernards to John Bryan, and the deed from John Bryan to Samuel Sackett, offered in evidence by the plaintiffs in this case, which were found among the other papers in the case of *Hughes* v. *The Heirs of Shore.* These deeds were necessary exhibits and evidence in the case to entitle Hughes to the relief prayed for. They were produced from the files of the highest court of the county where the lands were situate, from the custody of an officer charged by law with their care and safe-keeping, where they had been placed for a necessary and proper use, and from which they could not be withdrawn without the order and consent of the court. Their custody was, therefore, accounted for, and was shown to be proper and beyond suspicion.

It further appeared that upon the trial of the case of *Hughes* v. *Shore's Heirs*, on July 8, 1825, the patent to Charles Fleming from the Commonwealth of Virginia for 16,191 acres of

land, the will of Charles Fleming and the said deed of William Fleming and the Bernards, trustees, to John Bryan, were offered in evidence. The latter was rejected " because," as the bill of exception states, "the certificate and seal of the mayor of Philadelphia" was " not sufficient to authorize it to be read, and because the same could not be read as a recorded deed, not having been recorded within the time prescribed by law." And " because by rejecting this deed complainants' claim of title was broken and they could not further progress with their evidence, the court rendered a decree dismissing their bill." It is, therefore, made clear by the evidence offered that at least as early as the year 1825 the deed of William Fleming and the Bernards to John Bryan was on file in the Circuit Court of Greenup County, and it may be safely inferred that the other documents mentioned by Hughes as his muniments of title were also on file in the same court at the same time, and that all the deeds remained in the custody of the court down to the time when they were produced by the clerk under the subpœna *duces tecum* issued in this case, a period of fifty-five years.

Another circumstance relied on to show the genuineness of the original deeds was that each bore indorsed thereon a certificate apparently ancient and genuine, one with the signature of the recording officer and the other without signature, to the effect that the deeds had been recorded in the year 1816. In the case of *Stebbins* v. *Duncan*, 108 U. S. 32, 50; it was held that a certified copy of a memorandum made at the foot of the record of a deed " recorded June 23d, 1818," and without signature, was competent and conclusive evidence that the deed had been recorded at the date mentioned. In view, therefore, of the habit of recorders of deeds, which is universal and matter of common knowledge, to indorse upon the deeds themselves the fact and date of their registration, the certificates appearing on the deeds in question were competent and sufficient evidence of the fact that the deeds had been put upon record during the year mentioned in the certificates.

We think this evidence, supported by an inspection of the deeds, was sufficient to justify their admission as ancient deeds without direct proof of their execution. The rule is that an

ancient deed may be admitted in evidence, without direct proof of its execution, if it appears to be of the age of at least thirty years, when it is found in proper custody, and either possession under it is shown, or some other corroborative evidence of its authenticity, freeing it from all just grounds of suspicion. Thus, in *Barr* v. *Gratz*, 4 Wheat., above cited, a deed from Craig to Michael Gratz, dated July 16, 1784, was offered in evidence, but was not proved by the subscribing witnesses, nor their absence accounted for. Its admission was alleged as error; but this court said that, as the deed was more than thirty years old, and was proved to have been in the possession of the lessors of the plaintiff, and actually asserted by them as the ground of their title in a prior chancery suit, it was in the language of the books sufficiently accounted for, and on this ground, as well as because it was a part of the evidence in support of the decree in that suit, it was admissible without the regular proof of its execution.

So in *Caruthers* v. *Eldredge*, 12 Gratt. 670, it was contended by the plaintiff in error that in no case could a paper be admitted in evidence as an ancient deed, without proof of its execution, until it was first shown that thirty years' quiet and continued possession of the land had been held under the deed. But the court held, in substance, that an ancient deed may be introduced in evidence without proof of its execution, though possession may not have been held for thirty years in accordance therewith, if such account be given of the deed as may be reasonably expected under all the circumstances of the case, and as will afford the presumption that it is genuine.

In *Harlan* v. *Howard*, 79 Ky. 373, the Court of Appeals states the rule in relation to the proof of ancient deeds thus: " The genuineness of such instruments may be shown by other facts as well as that of possession. And when proof of possession cannot be had, it is within the very essence of the rule to admit the instrument, where no evidence justifying suspicion of its genuineness is shown, and it is found in the custody of those legally entitled to it." See also Vin. Ab., Evidence A. b. 5; Ancient Deeds, 7; Com. Dig. Evidence, B. 2; 1 Greenleaf on Evidence, § 144, and note 1; Starkie on Evidence, 524;

Phillipps on Evidence, Cowen & Hill's Notes, Part II., note 197, page 368, *et seq.*, 3d ed.; note 430, page 400, 5th ed.; *Doe* v. *Passingham*, 2 Car. & P. 440; *Rancliffe* v. *Parkyns*, 6 Dow, 149, 202; *Winn* v. *Patterson*, 9 Pet. 663; *Jackson* v. *Laroway*, 3 Johns. Cas. 283; *Hewlett* v. *Cock*, 7 Wend. 371.

In the case last cited, Judge Nelson, afterwards a justice of this court, said, that there was some confusion in the cases in England and New York as to the preliminary proof necessary to authorize an ancient deed to be read in evidence; that possession accompanying the deed was always sufficient without other proof, but it was not indispensable. He approved the decision in *Jackson* v. *Laroway*, *ubi supra*, which he said had been recognized as law in *Jackson* v. *Luquere*, 5 Cowen, 221, and had undoubtedly in its favor the weight of English authority. These authorities sustain the rule as we have stated it.

The deeds in question, when offered in evidence, purported to be over eighty years old, and their appearance tended to prove their antiquity and their genuineness. The testimony offered in support of them proved their existence as far back as the year 1816, and that in that year they had been placed upon the public record of deeds, where, if properly acknowledged, they would have been entitled to registration. In the same year in which they were recorded they were mentioned and referred to in the bill filed by *Hughes* v. *Shore's Heirs* as muniments of his title, and he offered to produce them when required. There is no reason to doubt that they remained in the rightful custody of the clerk in whose office they had become file papers, until, after a lapse of at least fifty-five years, they were found and produced upon the trial of the present case by the officer to whose custody they belonged.

But the proof of the genuineness of both deeds was greatly strengthened by evidence which applied directly to one only of the two, namely, the original deed from John Bryan to Samuel Sackett, dated January 28, 1797.

This consisted of the record of a partition made October 18, 1810, on the application of James Hughes, by commissioners under authority of a general act of the Legislature of Kentucky, approved December 19, 1796. Hughes claimed the un-

divided half of the 18,000 acres conveyed to Charles Fleming by the Governor of Virginia, by patent dated April 21, 1792, and alleged as muniments of his title the said patent and the deed of John Bryan to Samuel Sackett. On the strength of the title shown by Hughes the commissioners divided the 18,000 acres and set off and conveyed to him the one-half thereof in severalty, and in their deed of conveyance referred to the patent to Charles Fleming, and the deed of Bryan to Sackett, as links in the title of Hughes. The partition thus made is shown to have been recognized by successive conveyances of parts of the land set off to Hughes and by possession held thereunder. The testimony, therefore, shows that as early as the year 1810 the deed of Bryan to Sackett was in existence, that it was recognized as a genuine deed by public officers whose duty it was to scrutinize it, and was made by them the basis of their official action, and that possession has been held of a portion of the land described therein by persons who trace title through it to the patent to Charles Fleming. These two deeds under consideration are shown by the record to have a common history, and to have been relied on as links in the same chain of title. Testimony, therefore, which is directly applicable to one only, tends to support the other. The facts, therefore, which we have just stated in reference to the deed from Bryan to Sackett, tend to show also the genuineness of the deed from Fleming and the Bernards to Bryan. We are, therefore, of opinion that the genuineness of both deeds was proven, and that the court erred in excluding them from the jury.

The offer in evidence of the original deed from Charles Fleming to John and William Bryan, dated August 8, 1794, stands upon substantially the same ground as the two deeds already considered. The bill of exceptions states that the plaintiffs offered in support of the competency of this deed the same evidence as was offered in support of the two last mentioned deeds; that it was found at the same time and place and produced from the same custody. In further support thereof the plaintiffs produced the clerk of the Mason County Court, having with him deed book B, containing deeds re-

corded in the clerk's office of that court, beginning February 22, 1794, and the two or three years next ensuing, and offered to show that there was recorded in that book a deed identical in terms with the aforesaid original deed. They also offered and read in evidence a copy of the deed duly certified from the clerk's office of the Mason County Circuit Court, with a copy of the certificate thereto appended showing that the original deed was recorded in the year 1794. It follows, from what we have said in relation to the admissibility of the other original deeds, that this one also should have been received in evidence, and that the Circuit Court erred in excluding it.

It remains to consider the exclusion by the Circuit Court of the transcript of the record in the case of *Clark* v. *Conkling.* This was a suit brought by Clark in the District Court, held at Washington in Mason County, Kentucky, on June 13, 1798, as the assignee of the mortgage from Conkling to Sackett, to foreclose the same; and the record was offered only to show the orders and decrees of the court in respect to the mortgaged premises situated within its jurisdiction, and not to prove any personal decree against the defendants. It appears from the record in this case that a subpœna having been issued and returned with the indorsement that the defendants were not inhabitants of the Commonwealth, the court made the following order, at its November Term, 1798 :

" The defendants, not having entered their appearance agreeably to an act of assembly and rules of this court, and it appearing to the satisfaction of the court that they are not inhabitants of this Commonwealth, on the motion of the complainant, by his attorney, it is ordered that the defendants appear here on the third day of our next term and answer the complainants' bill; and that a copy of this order be inserted in the Kentucky Gazette or Herald for two months, successively ; another posted at the door of the court-house of Mason County; and that this order be published some Sunday at the door of the Baptist meeting-house in Washington."

In June, 1799, the bill was taken as confessed, and an interlocutory decree made requiring the defendants to pay the money due on the mortgage. The money not having been paid a de-

cree of sale was made at the February term, 1800. The com-
missioners to make the sale reported on July 19, 1802, that after
public notice they had sold the lands at public sale to Carey L.
Clark, the complainant. Afterwards a final decree was made
foreclosing the defendants of their equity of redemption in the
premises.

The defendants objected to the introduction of the record,
and the objection was sustained, and the defendants now insist
that the exclusion of the record was right, first, because the
court did not have authority of law to hear and determine the
subject-matter of the suit, nor of suits of the class to which it
belonged; and, second, because the record exhibits no proof of
the publication or posting of the notice to the defendants as
required by the laws of Kentucky.

We think the first objection is answered by reference to the
statute laws of Kentucky, in force at the time. Section 8 of
the act of the General Assembly of Kentucky, approved Decem-
ber 19, 1795, "to establish District Courts in this Common-
wealth," provided as follows : " The jurisdiction of the said Dis-
trict Courts, respectively, shall be over all persons, and in all
causes, matters, and things at common law or in chancery,
arising within their districts," excepting actions of assault and
battery or suits for slander and subjects of controversy of less
than fifty pounds in value. 1 Littell's Laws of Kentucky, 298.

Section 4 of the act approved December 19, 1796, directing
the method of proceeding in courts of equity against absent
debtors and other absent defendants, provides for constructive
service by publication, "in all cases, whatever, when a suit is or
shall be depending in any court of chancery, concerning any
matter or thing whatever, against any absent defendant or
defendants." 1 Stat. (Laws M. & B.), 93. These provisions of
the statute law are ample to confer jurisdiction on the court
where the property in controversy is within its territorial juris-
diction, and are so clear as to require no discussion of the ques-
tion. For, as was said in *Grignon's Lessee* v. *Astor*, 2 How. 338,
"the power to hear and determine a cause is jurisdiction. If
the law confers the power to render a judgment or decree, then
the court has jurisdiction."

But it is objected to the record that it does not show publication and posting of notice to the defendants, as required by the order of the court and by law.

The law is found in section 2 of the act of December 19, 1796, *ubi supra*, and is as follows: "The court shall also appoint some day in the succeeding term for the absent defendant or defendants to enter his, her, or their appearance to the suit, and give security for performing the decree, a copy of which order shall be forthwith published in the Kentucky Gazette or Herald, and continued for two months successively, and shall also be published on some Sunday, immediately after divine service, in such church or meeting-house as the court shall direct, and another copy shall be posted at the front door of the said court-house."

The plaintiffs in the present case offered evidence outside the record to prove the fact that the order was published in the Kentucky Gazette, as required by the statute, by calling the assistant librarian of the public library at Lexington, "having with him," as the bill of exceptions states, "printed newspapers which appeared to be of great age, and which purported to be the original files of the newspaper called the Kentucky Gazette, published weekly; and plaintiffs showed, in nine successive issues of said newspaper, weekly publications, beginning with December 12, 1798, and ending with February 7, 1799, of" the order of the court above mentioned.

But no proof was offered to show the publication of the order at the church or meeting-house, or the posting of it at the front door of the court-house. After the lapse of more than eighty years proof not of record of these facts was clearly impossible. The fact, therefore, that after the lapse of so long a time the plaintiffs were able to show that the order of the court had been obeyed, by its publication in a newspaper, was persuasive evidence that the other requirements of the order had also been performed.

But the record contained no proof of the publication and posting of the notice as required by the statute, and it is insisted by the defendants in this case, that the record itself must show the publication and posting of the notice as required by

law, otherwise the jurisdiction of the court does not appear, and its decree is absolutely void.

While it must be conceded that, in order to give the court jurisdiction over the persons of the defendants, all the steps pointed out by the statute to effect constructive service on non-residents were necessary, yet it does not follow that the evidence that the steps were taken must appear in the record, unless indeed the statute expressly or by implication requires it. The court which made the decree in the case of *Clark* v. *Conkling* was a court of general jurisdiction. Therefore every presumption not inconsistent with the record is to be indulged in, in favor of its jurisdiction. *Kempe's Lessee* v. *Kennedy*, 5 Cranch, 173; *Voorhees* v. *Bank of the United States*, 10 Pet. 449; *Grignon* v. *Astor*, 2 How. 319; *Harvey* v. *Tyler*, 2 Wall. 328. It is to be presumed that the court before making its decree took care to see that its order for constructive service, on which its right to make the decree depended, had been obeyed. That this presumption is authorized will appear by the following cases: In *Harvey* v. *Tyler*, *ubi supra*, the court, speaking by Mr. Justice Miller, said: "The jurisdiction which is now exercised by the common law courts in this country is, in a very large proportion, dependent upon special statutes conferring it. . . . In all cases where the new powers, thus conferred, are to be brought into action in the usual form of common law or chancery proceedings, we apprehend there can be little doubt that the same presumptions as to the jurisdiction of the court and the conclusiveness of its action will be made, as in cases falling more strictly within the usual powers of the court." p. 342.

In *Hall* v. *Law*, 102 U. S. 461, the validity of a partition of lands, made by a Circuit Court of the State of Indiana, was attacked. This court, speaking by Mr. Justice Field, said: "All that" the statute "designates as necessary to authorize the court to act is, that there should be an application for the partition by one or more joint proprietors, after giving notice of the intended application in a public newspaper for at least four weeks. When application is made, the court must consider whether it is by a proper party, whether it is sufficient in

form and substance, and whether the requisite notice has been given, as prescribed. Its order made thereon is an adjudication in these matters." pp. 463–464.

The case of *Voorhees* v. *Bank of the United States*, 10 Pet. 449, was an action of ejectment, and the case turned on the validity of a sale of the premises in controversy under a judgment of the Court of Common Pleas of Hamilton County, Ohio, in a case of foreign attachment. The sale was attacked on the following among other grounds: (1.) Because the statute authorizing the proceeding by foreign attachment required that an affidavit should be made and filed with the clerk before the writ issued, and no such affidavit was found in the record. (2.) Because the statute directed three months' notice to be given, by publication in a newspaper, of the issuing of the attachment, before judgment should be entered, and also required fifteen days' notice of sale to be given, neither of which appeared by the record to have been done. (3.) Because the statute required that the defendant should be put in default at each of the three terms preceding the judgment, and the default entered of record, but no entry was made of the default at the last of the three terms.

But the court overruled the objections and sustained the validity of the judgment and the sale. It said: "But the provisions of the law do not prescribe what shall be deemed evidence that such acts have been done, or direct that their performance shall appear on the record. The thirteenth section [of the attachment law], which gives to the conveyances of the auditors the same effect as a deed from the defendant in the attachment, contains no other limitation than that it shall be 'in virtue of the authority herein granted.' This leaves the question open to the application of those general principles of law by which the validity of sales made under judicial process must be tested; in the ascertainment of which we do not think it necessary to examine the record in the attachment, for evidence that the acts alleged to have been omitted appear therein to have been done." p. 471.

The result of the authorities and what we decide is, that where a court of general jurisdiction is authorized in a proceed-

ing, either statutory or at law or in equity, to bring in, by publication or other substituted service, non-resident defendants interested in or having a lien upon property lying within its territorial jurisdiction, but is not required to place the proof of service upon the record, and the court orders such substituted service, it will be presumed in favor of the jurisdiction that service was made as ordered, although no evidence thereof appears of record, and the judgment of the court, so far as it affects such property, will be valid. The case of *Galpin* v. *Page*, 18 Wall. 350, cited by counsel for defendant, is not in conflict with this proposition. The judgment set up on one side and attacked on the other in that case was rendered on service by publication. The law permitted service to be made by publication only where certain facts were made to appear to the satisfaction of the court, and the court by a precedent order, which must necessarily appear of record, authorized service to be made by publication. But the record showed no such order, and the publication, therefore, was the unauthorized act of the party, and appeared affirmatively to be invalid and ineffectual. See also *Pennoyer* v. *Neff*, 95 U. S. 714, 727, 734.

It results from the views we have expressed, that

*The judgment of the Circuit Court of Kentucky must be reversed and the cause remanded, with directions to grant a new trial.*