TEMPLETON et al. v. LUCKETT et al.[1]

(Circuit Court of Appeals, Fifth Circuit. May 12, 1896.)

No. 449.

1. EVIDENCE—ANCIENT INSTRUMENTS—PROPER CUSTODY.
    In an action involving the title to land in Texas located under a land certificate issued to the heirs of a soldier in the war of independence,

---

[1] Rehearing denied June 9, 1896.

the defendant offered in evidence a deed executed more than 30 years before the trial, and purporting to convey the certificate, the same forming a part of defendant's chain of title. The deed was produced from the Texas general land office, and the commissioner of that office testified that it was deposited there, together with other proofs of title, by an agent of B., one of defendant's predecessors in title, who claimed the certificate at the time, and by whom it was located on the land in controversy. The said agent also testified that the deed was so deposited by him for B., by whom the certificate was located, and to whom a patent for the land was issued. The deed was regular in form, and acknowledged before a proper officer, whose signature was identified. *Held,* that the deed was sufficiently shown to have come from the proper custody to be entitled to admission as an ancient instrument.

2. SAME—IDENTITY—OPINION OF WITNESS.

Upon a question of identity, a witness who was familiar with the person whose identity it is sought to establish cannot be permitted to testify that he is satisfied that a certain individual is that person, though he may state his reasons for his belief.

McCormick, Circuit Judge, dissenting.

In Error to the Circuit Court of the United States for the Northern District of Texas.

M. L. & W. L. Crawford, for plaintiffs in error.

W. L. Simpkins, for defendants in error.

Before PARDEE and McCORMICK, Circuit Judges, and SPEER, District Judge.

SPEER, District Judge. Henry P. Luckett, for himself, and as next friend of the minor children of himself and his wife, Cornelia, now deceased, were the plaintiffs in these actions in the circuit court. M. M. Templeton and several others were defendants in one case; W. T. Waggoner, the defendant in another. They were both actions in the ordinary form in trespass to try title, under the Texas practice. They were consolidated by order of the court. The first case mentioned involves 1,600 acres of land in Wichita county, Tex.; and the other case, namely, that against Waggoner, involves 640 acres of land in the same county. The defendants filed a plea of not guilty. The case was tried on June 30, 1895, and a verdict was rendered for the plaintiff against Templeton for the 1,600 acres of land, and against Waggoner for the 640 acres, and against both of the defendants for costs. The conflict of titles was as follows: Patents were issued by the state of Texas to the heirs of F. Petreswick for the lands in question,—one in 1874, and the other in 1876. The plaintiffs claim as his heirs. Testimony was introduced to show that prior to the year 1835 there resided in the parishes of Rapides and Natchitoches, La., two brothers, Fred and Peter Petrovic, but that the people of the county called them "Petreswick." It further appeared that in the latter part of 1835 Capt. Wyatt's company, which was enlisted in Huntsville, Ala., was on its march to Texas to take a part in the struggle of the American frontiersmen against the Mexican rulers of the land now comprehended in the state of Texas. As this company passed through Natchitoches, Fred "Petreswick" volunteered and was enlisted as one of its members. He never returned to Louisiana. He was one of the victims

in the massacre of the volunteers under Fannin, who were captured at Goliad. Peter "Petreswick" was the sole heir of Fred "Petreswick." Cornelia Luckett, who was the wife of Henry P. Luckett, and the mother of their minor children, was the nearest and next of kin. Upon these facts plaintiffs rely for a recovery.

The defendants were in possession of the land in controversy,— Waggoner, of the 640 acres; and Templeton, of the 1,600-acre tract. They attempted to prove that the F. Petreswick, who, by virtue of his services and death as a soldier in the cause of the young republic of Texas, became entitled to the land, was not the Fred Petreswick of Natchitoches; but was in point of fact a barber of military inclinations who resided in Huntsville, Ala., in 1835. That he enlisted in Capt. Wyatt's company, in that town in Alabama, where it was assembled, and went with the company to Texas, and was killed at the battle of Coleto a few days before the massacre of Goliad. In support of these contentions they read in evidence a memorial signed by the members of Capt. Wyatt's company at a convention of Texans which had assembled the 1st of March, 1835. On this appears the name of A. R. Petrusseweiz and H. F. Petrusseweiz. The defendants also offered in evidence testimony to show that one Charles Petreswick was sole heir of Fred Petreswick, who it is claimed was the Alabama barber who enlisted in Capt. Wyatt's company at Huntsville, and was, as a soldier, entitled, under the laws of Texas, to the lands in question. They also offered testimony of W. L. McGaughey, commissioner of the general land office of Texas, to the effect that the certificates for 1,920 acres of land were issued to the heirs of F. Petreswick, and that a survey of same was made in Wichita and Archer counties on the 21st day of March, 1873; that this survey was abandoned on account of a conflict, and a copy of the original certificate issued was delivered to Spence & McGill, land agents, for relocation; that said survey was located in Archer, Wichita, and Jack counties. The survey of 1,600 acres involved in this suit, situated at Archer and Wichita counties, was made July 2, 1874, for E. Boon. This survey was patented to the heirs of F. Petreswick November 4, 1874, and the patent delivered to Spence & McGill April 1, 1875. The survey of the 640 acres was made for Jacob Frees June 20, 1874; was patented January 24, 1875, to the heirs of F. Petreswick, and the patent delivered to De Cordova, Withers & Co. This witness further testified that there was filed in the land office on the 28th of February, 1873, the following papers: (1) Proof of heirship of Charles Petreswick to Francis Petreswick; (2) deed from Charles Petreswick to Benjamin F. Brown; (3) power of attorney, Benjamin F. Brown to W. F. Cummins; (4) deed, Benjamin F. Brown, by attorney, W. F. Cummins, to E. Boon, conveying 1,920 acres, certificate of survey. Copies of these documents are still in the land office. It further appears from the record in the case, that the original papers were withdrawn from the land office by H. C. Ferguson, one of the parties to this litigation, under an order from the district court of Denton county; and the circuit court for the Northern district of Texas has impounded during the term of that court the papers with the

clerk, as evidence in this case. The defendants also submitted the testimony of Joseph Spence. This witness stated that he was a member of the firm of Spence & McGill, land agents, Austin, in 1873; that this firm procured from the land office a certified copy of the certificate for 1,920 acres for E. Boon; that this was done for relocation of the lands; that they sent the certificate to Boon; that in order to show his right to withdraw the certificate, they filed in the land office, for him, papers showing his title. This corroborates the testimony of McGaughey to the effect that the patent for the 1,600 acres of land in controversy was delivered to Spence & McGill; that they received both for Boon, who furnished the money to pay for the patent, and who paid the expenses of the firm who procured it. This evidence was all offered in support of the deed purporting to convey the land certificate, under which the land in controversy was located; and the defendants offered the deed of Charles Petreswick, the heir of Francis Petreswick, of Capt. Wyatt's company, to Benjamin F. Brown, which purports to be executed in St. Louis, Mo., in 1852, and to be acknowledged before S. J. Levy, he being a commissioner of deeds for the state of Texas. The deed further purports to have been executed in the presence of two witnesses,— Albert Taylor and H. Lee. This deed, as before stated, was impounded with the clerk of the court. In further support of the deed, the defendants offered the testimony of William C. Jones and Morris Jack. These witnesses reside in St. Louis, Mo., and state that they were well acquainted with S. J. Levy, commissioner of deeds for Texas, and that they knew his handwriting; they had examined the original deed, and that the handwriting purported to be that of S. J. Levy; that the certificate of acknowledgment to the said deed was a genuine signature of Levy; and that Levy died in St. Louis about the year 1873. This deed, upon the admission of which the title of defendants necessarily depends, was objected to by the counsel for plaintiff because an affidavit of forgery had been filed. The defendants offered the deed as an ancient instrument. Counsel for plaintiff objected on the ground that the deed was not shown to have come from the proper custody. The court sustained the objection to exclude the deed, and it follows, necessarily, that a verdict was rendered in favor of the plaintiff. To the ruling of the court the defendants excepted, and assigned it as error.

The rule governing the question thus presented is announced with his usual clearness by Prof. Greenleaf:

"Where these instruments are more than thirty years old, and are unblemished by any alterations, they are said to prove themselves. The bare production thereof is sufficient, the subscribing witnesses being presumed to be dead. This presumption, so far as the rule of evidence is concerned, is not affected by proof that the witnesses are living. But it must appear that the instrument comes from such custody as to afford a reasonable presumption in favor of its genuineness, and that it is otherwise free from just grounds of suspicion."

The possession and control of such instrument by the party claiming the land, where it is not made to appear that such contract was fraudulent or unlawful, is a proper custody. Documents found in a place and under the care of persons where and with whom one would

naturally and reasonably look for such papers are in proper custody. 1 Greenl. Ev. par. 142. The rule is elsewhere expressed as follows:

"Documents are said to be in proper. custody if they are in the place in which, and under the care of the person with whom, they would naturally be; but no custody is improper if it is proved to have had a legitimate origin, or if the circumstances of the particular case are such as to render such an origin probable." 7 Am. & Eng. Enc. Law, 90.

Indeed, the evidence applicable to this deed brings it within the rule as announced by the supreme court of the United States, which seems to require some supplementary evidence of genuineness. In Applegate v. Mining Co., 117 U. S. 255, 6 Sup. Ct. 745, Justice Wood, for the court, remarks:

"The rule is that an ancient document may be admitted in evidence, without direct proof of its execution, if it appears to be of an age of at least thirty years, when found in some proper custody, and either possession under it be shown, or some other corroborative evidence of its authenticity, freeing it from all just grounds of suspicion."

In that case deeds were produced from the file of the highest court of the county where the lands were situated, where they had been placed for necessary and proper use, and from which they could not be withdrawn without the order and consent of the court. The court held that the proper custody, and for these reasons the deeds should have been admitted.

Error is also assigned on the ruling of the court excluding testimony of John C. Duval. This relates to the signatures of H. Francis Petrusseweiz and Adolph Petrusseweiz. This witness served under Fannin at the battle of Coleto, and at Goliad. He said that he knew a man whose name was Francis Petrusseweiz, who was there at the time; that he belonged to Wyatt's company; he was a foreigner,—Polish, Prussian, or Hungarian. He did not know him by the name of "Petreswick." The witness stated, "I never saw the name spelled, except as it appeared on Wyatt's muster roll, and on the memorial," the original of which witness examined in the office of the secretary of state of Texas in December, 1892. He identifies his own signature, as well as his brother's, but could not identify that of H. Francis Petreswick, as he had never seen him write. The memorial, he said, was signed by the soldiers about February 1, 1836, but not by all at the same time. The defendant then offered to read from the deposition of the witness, this statement:

"I am satisfied in my own mind that the man whose name is signed to the said document as 'H. Francis Petrusseweiz' is the same man whose name appears on Capt. Wyatt's muster roll as 'F. Petreswick,' and that is his own signature, which I presume was his real name, and the correct spelling of it, from the appearance of the signature, and the circumstances under which it was signed, and because there was no other name at all similar to this on the roll of Capt. Wyatt's company, except that of A. Adolph Petrusseweiz, that could have been so spelled. I am reasonably certain that the correct name is, as there written, H. Francis Petrusseweiz."

To this plaintiff objected. With regard to the objection of the testimony, we are of the opinion that part of it should have been admitted, and the remainder excluded. The witness' statement that he was satisfied that Petrusseweiz and Petreswick is the same

man was not proper. It was proper for him to state that there was no other name at all similar to this on the roll of Capt. Wyatt's company that could have been so spelled, and all other facts actually within his memory which might serve to illustrate the question of the identity of the person in question. These facts having been stated, the jury were quite as competent as the witness to form conclusions as to the identity, and the law imposes that duty upon them. A belief of the witness, however well founded, cannot be regarded as evidence. He is not able to state as a fact that which he states he believes. The authorities cited by plaintiff in error in support of the admissibility of this belief do not conflict with our conception of the proper application of a familiar rule of evidence to this objection. Upon consideration of the questions raised by the exception, we are satisfied that the verdict should be set aside, and a new trial ordered. The decision of the circuit court is therefore reversed.

McCORMICK, Circuit Judge (dissenting). I cannot concur in the decision of this case. I do not find in the record any evidence that the purported grantor in the deed offered as an ancient instrument was the heir, or one of the heirs, to whom the land was granted by the state, or that he held under them, or in any other manner had a right of ownership in the certificates which the instrument offered purports to convey. Such evidence is a fundamental requisite in showing proper custody of the instrument offered.