# BAKER v. NEWTON.

No. 600.   Opinion Filed November 22, 1910.

1.   COURTS—County Courts as Successors of Probate Courts—Procedure.   The county court of the state, as to all causes jurisdiction of which is conferre'd upon it by the Constitution and which theretofore had been in the probate court of the territory, is a successor of said probate court; and the statutes prescribing the procedure in the trial and disposition of such causes in the probate court govern the trial and disposition of said causes in the county court, in so far as said statutes are not in conflict with the Constitution or inapplicable.

2.   COURTS—County Courts—Clerks.   By reason of section 18 of the Schedule to the Constitution, among the duties and powers devolving upon the judge of the county court, upon the admission of the state, was to act as clerk of his court.

3.   SAME—Terms of Court—Adjournment.   Adjournment of the regular term of a county court, without fixing in the order of adjournment any time at which the court shall reconvene, precludes the court from again convening until the time fixed by law for the next regular session of the court.

4.   JURY—Trial by Jury—Constitutional Guaranty.   The trial by jury secured to the people of the state by section 19, art. 2 of the Constitution, is a trial according to the course of the common law as it existed and the same in substance as that which was in use when the Constitution was adopted, except as specifically modified by the provisions of· the Constitution.

5.   SAME—Elements—Powers of Trial Judge.   One of the elements of the trial by jury, as it existed in this jurisdiction before the admission of the state, was the power of the trial judge to instruct the jury upon the law.

6.   COURTS—County Courts—Civil Procedure—Territorial Statutes—Effect of Statehood.   Sections 1872, 1873 and 5028 of Wilson's Rev. & Ann. Statutes, providing that in all civil cases commenced in probate courts wherein the amount is within the jurisdiction of the justice of the peace courts the procedure shall be the same as in proceedings before the justice of the peace. and that the judge shall not have power to instruct the jury, is repugnant to section 19, art. 2 of the Constitution and was not extended in force in the state so as to be made applicable to the trial of causes in the county courts.

7.   SAME.   Section 1880 of Wilson's Rev. & Ann. Statutes, providing that probate courts shall be open at all times for the trial of cases under the justice procedure, is inapplicable to the trial

of civil cases in the county courts of the state and to that extent was not extended in force in the state.

(Syllabus by the Court.)

*Error from Ottawa County Court; D. W. Talbot, Judge.*

Action between K. R. Newton and Charles Baker. From the judgment the latter brings error. Reversed and remanded.

*W. H. Kornegay,* for plaintiff in error.
No copies of briefs reached the reporter.

HAYES, J. This proceeding in error is brought to have reviewed a judgment of the county court of Ottawa county. The proceedings in that court were presented to this court upon the application of plaintiff in error for a writ of certiorari in *Baker v. Newton et al.,* 22 Okla. 658. The proceedings of the trial court contain a great many irregularities, most of which are set out in the statement of facts in the foregoing case. The procedure attempted to be followed was that applicable to courts of justices of the peace. Plaintiff in error now contends, as he did in the former case, that no trial was ever had or judgment rendered in the county court, but that the cause was instituted, prosecuted and tried before the judge of the county court, sitting as a justice of the peace. The facts relative to this contention were stated by this court in *Baker v. Newton et al.,* and we there stated our conclusion to be that the case was tried in the county court under the procedure controlling the courts of justices of the peace, and we are still of the same opinion. For a full statement of the facts relative to the proceedings in the trial court, reference is made to the opinion of the court in that case.

Plaintiff in error makes twenty-eight assignments of error for reversal of the cause, but no bill of exceptions was asked for by him or allowed by the trial court, and this proceeding is upon a petition in error and transcript of the record and not upon a case-made. Several of the assignments made present questions that could be reviewed only upon a bill of exceptions or a case-made. Those assignments will not be considered. Plaintiff in

error contends that the judgment of the trial court is void upon the following grounds: First, that sections 11 and 12 of art. 7 of the Constitution, creating county courts and defining their jurisdiction, are not self-executing, and at the time of the trial in the court below no county court was or could be organized in the state. Second, that the judgment was rendered out of term time. Third, because the cause was tried under procedure applicable to the trial of causes in courts of justices of the peace, instead of under the procedure applicable to county courts. We shall consider these contentions in the order here named, except we shall consider the last two together.

1. This case was instituted in the lower court on the 14th day of March, 1908, and the trial had and judgment rendered on the 18th day of the same month. At that time no legislation had been enacted by the State Legislature relative to county courts, their jurisdiction or procedure therein. The law in force at that time pertaining to these questions consists of the provisions of the Constitution and of the statutory provisions extended in force in the state applicable thereto. Sections 11, 12, 13 and 14 of art. 7 of the Constitution (Snyder's Const., p. 219) establish a county court in each county of the state; declare that the same shall be a court of record; provide for the election of a county judge; prescribe his qualifications; fix his term of office; confer upon the county court, co-extensive with the county, original jurisdiction in probate matters and, until otherwise provided by law, concurrent jurisdiction in civil cases in the amount not exceeding $1,000, exclusive of interest. Prior to the admission of the state there existed in that portion of the state constituting the Indian Territory no court that corresponded to the county court, as it now exists in this state, or to the probate court, as it existed in the territory of Oklahoma before the admission of the state. There were no probate courts in the Indian Territory. The United States courts for the several districts of the Indian Territory possessed probate jurisdiction, but they were not probate courts. In Oklahoma Territory the judicial system consisted of the territorial district courts,

probate courts and courts of justices of the peace. The statutes in force in that jurisdiction prescribed procedure applicable to the trial and disposition of civil cases in those respective classes of courts, and these statutes were, by the terms of the enabling act and the Schedule to the Constitution, put in force in the state in so far as they are applicable and not inconsistent with the provisions of the Constitution. (Sec. 21, Act of Congress approved June 16, 1906; Snyder's Const. of Okla., p. 399; sec. 2 of the Schedule, Snyder's Const., p. 380).

In the judicial system established in the state by the Constitution, there is no court which is by name called a probate court, just as there was no court in the judicial system of the territory of Oklahoma that was by name called a county court; but the powers and jurisdiction of the probate courts of the territory and of the county courts of the state are, in many respects, the same. It is contended, however, that the county court is in no sense the successor of the probate court with respect to cases not pending at the time of the admission of the state, because it is not specifically so declared in the Constitution. If this contention is correct, there was no statute in force in the state upon its admission, or at the time of the trial in the court below, fixing the term of the county court or prescribing the procedure for the trial and the disposition of causes instituted in county courts after the admission of the state. The relation of a county court of the state to the probate court under the territorial system was considered by this court to some extent in *Crump et al. v. Pitchford,* 24 Okla. 808. In the first paragraph of the syllabus to that case it is said:

"The county court (section 12, art. 7, Const.) is the successor of the probate court as it existed under the territory of Oklahoma only as to matters or proceedings pending at the time of the admission of the state, and administrations and guardianships as provided in section 12, art. 7, of the Constitution."

Reading this syllabus alone, it would appear to have been held in that case that the county courts of the state are not the successors of the probate courts of the territory as to the juris-

diction conferred upon said courts by the Constitution in civil causes; and, since there is no statute or provision of the Constitution specifically declaring that the civil procedure applicable to probate courts shall apply to causes in the county courts, and, since they are in name different courts, if the latter be not in any respect the successor of the former, no procedure existed until same was prescribed by act of the Legislature. But the syllabus by the court must be read in connection with the opinion in order to determine the exact question decided in that case. In the opinion, which was delivered by Mr. Justice Williams, it is said:

"The county court, under the Constitution, has specifically defined powers and jurisdiction; and, had it been intended for it to have succeeded fully to the jurisdiction of the probate court, as it existed under the territory, it would have been so indicated. On the contrary, it having been made by virtue of section 23 of the Schedule the successor only as to pending matters, it appears to be its successor only to that extent, *except as it may be affected by section 12, art. 7 of the Constitution.*" (Italics are ours).

The exact question before the court in that case was whether a county court has jurisdiction of a forcible entry and detainer action. The Constitution does not, in defining the powers and jurisdiction of the county court, name forcible entry and detainer actions as a class of cases of which it shall have jurisdiction. Section 1872, Wilson's Rev. & Ann. Statutes, conferred upon the probate courts in their respective counties all the ordinary powers and jurisdiction of justices of the peace, one of which powers and jurisdiction was jurisdiction of forcible entry and detainer actions; but the court held in the Crump case that the powers and jurisdiction of a county court are only those defined by the Constitution, and that the county court did not succeed to any other jurisdiction theretofore existing in the probate courts than that named in the Constitution; and, since the jurisdiction of forcible entry and detainer actions was not specified in the Constitution, the county court had no jurisdiction of such actions. But it was not held that as to those powers and jurisdictions con-

ferred by the Constitution upon the county courts which had theretofore existed in the probate court of the territory the county court is not the successor of the probate court. On the other hand, this question was left open and undecided in the opinion by the statement therein that the county court is the successor of the probate court only as to the extent made so by section 23 of the Schedule: "Except as it may be affected by section 12, art. 7, of the Constitution." Section 12, art. 7, of the Constitution, confers upon the county court jurisdiction of probate matters and jurisdiction of civil cases in any amount not to exceed $1,000, exclusive of interest, the jurisdiction of the latter class of cases being concurrent with the district court, and denies to the county court jurisdiction in certain classes of cases. The jurisdiction conferred by this section was, before the admission of the state, in the probate court of the territory. In the territorial judicial system, the probate court was the court of the county, the district court the court of the territory, and the justice of the peace court the local court. In the judicial system of the state, the district court is a state court, the county court the court of the county, and the justice court the local court. It is true the Constitution nowhere declares that the county court, as to causes not pending, shall be the successor of the probate court under the judicial system of the territory of Oklahoma; but the same may be said as to the district courts of the state and as to the courts of justices of the peace; but it has never been questioned by the bench or bar in this court, or, so far as we know, in the trial courts of the state, that the district courts and the courts of justices of the peace are the successors of the corresponding courts under the territorial system to the extent that the procedure for the trial of causes under the statutes in force in the territory of Oklahoma before the admission of the state is applicable to the trial and disposition of causes in said courts since the admission of the state. Yet the jurisdiction of none of these classes of courts is exactly the same as the jurisdiction of the corresponding class under the territorial government. It was the

intention of Congress, evidenced by the provisions of the enabling act extending in force all laws in the territory of Oklahoma at the time of the admission of the state into the Union and of the framers of the Constitution by making a similar provision in the Schedule of the Constitution, that there should be no greater lapse in the administration of government of the state in all of its departments, on account of the change in the form of government, than was unavoidable, and the provisions of the enabling act and the Schedule to the Constitution extending said laws in force in the state should receive a liberal construction to effectuate that purpose; and we think that it was intended and should be held that the county court of the state, as to all causes jurisdiction of which is conferred upon it by the Constitution which theretofore has been in the probate court of the territory, is a successor of said probate court; and the statutes prescribing a procedure for the trial and disposition of such causes in the probate courts govern the trial and disposition of said causes in the county courts in so far as said statutes are not in conflict with the Constitution or inapplicable.

Section 11, art. 7, of the Constitution makes the county court a court of record, and it is insisted by counsel for plaintiff in error that, upon the admission of the state, there was no law providing a clerk for the county court, and that for this reason, also, the provisions of the Constitution creating county courts were not self-executing; but we do not think this contention well founded. Section 1892 of Wilson's Rev. & Ann. Statutes provides that the judge of the probate court shall also be clerk of said court. Section 18 of the Schedule to the Constitution provides that, until otherwise provided by law, the terms, duties, powers, qualifications and salary and compensation of all county and township officers, not otherwise provided by the Constitution, shall be as provided by the laws of the territory of Oklahoma for like named officers; and that the duties and compensation of the probate judge shall devolve upon and belong to the judge of the county court. One of the duties of the judge of the probate court was to act as clerk

of his own court. This duty devolved upon the judge of the county court upon the admission of the state. It is true that the Constitution, in defining the duties and powers of county officers, does not use the word "power" with respect to the judges of the county courts, as it does in connection with the other county officers; but it provides that the duties of the judge of the county court shall be the same as the duties of the probate judge under the laws extended in force in the state. For every duty there is a corresponding power; and it would be inconsistent to hold that it was intended to impose upon the judge of the county court the duties of the probate judge and at the same time deny to him the power to discharge those duties. With every duty imposed, a corresponding grant of power to discharge that duty is implied, although not conferred in specific terms. To have provided that the duties "and powers" of a probate judge shall devolve upon and belong to the judge of the county court would have added nothing to the force and comprehensiveness of the language used.

2 and 3. Section 1875 of Wilson's Rev. & Ann. Statutes provides that the probate courts shall hold terms beginning on the first Mondays in January, March, May, July, September and November of each year. This section fixes the beginning of the terms at which the trial and disposition of civil causes, prosecuted in the probate courts of the territory not governed by the procedure of courts of justices of the peace, might be had. *American Fire Insurance Co. v. Pappe,* 4 Okla. 110; *Irwin v. Irwin,* 2 Okla. 180. The county court of Ottawa county convened in regular term on March 2, 1908. On the same date it adjourned, subject to call. The order of adjournment fixes no time at which the court shall be reconvened. The trial of the case at bar occurred on the 18th day of March of the same year. No call of any term on that date was made by the judge or by any order of court; and there is no statute authorizing terms of court to be called or held at any other time than those fixed by the statute. Upon adjourning the regular term, without fixing in the order of adjournment any time at which the court should reconvene, the

term elapsed and the court was precluded from thereafter again convening the court, until the time fixed by law for the next session of the court. *Irwin v. Irwin, supra.* The judgment, therefore, rendered in this cause was rendered at a time when the court was not legally in session, and is, therefore, void, unless the procedure of justice of the peace courts applies.

Sections 1872 and 1873 of Wilson's Revised & Annotated Statutes provide that in all civil cases commenced in the probate courts, wherein the amount exceeds the jurisdiction of justice of the peace courts, the civil procedure governing pleadings and practice and proceedings in the district courts shall apply; but, in all cases which are within the jurisdiction of the justice courts, the practice, proceedings and pleadings brought before and after judgment provided for justice procedure shall be applicable. And section 1880 provides that said courts shall be deemed to be always open for the trial of all actions commenced therein that are triable under the justice procedure.

It follows that, if the justice procedure is applicable since the amount involved in this cause is within the jurisdiction of the justice court, the trial court had authority to proceed at any time to try the cause. But is the justice procedure applicable? As previously stated, the enabling act and the Schedule only extend in force in the state the statutes theretofore in force in the territory of Oklahoma in so far as the same are not in conflict with the Constitution or inapplicable. No appeal lies in civil cases from the county court to the district court, but all appeals in such cases shall be to the Supreme Court in the same manner and by like proceedings as appeals are taken from the judgment of the district court to the Supreme Court. Sec. 15, art. 7, Const.

Section 19, art. 2 of the Constitution provides that:

"The right of trial by jury shall be and remain inviolate, and a jury for the trial of civil and criminal cases in courts of record, other than county courts, shall consist of twelve men; but in county courts and courts not of record, a jury shall consist of six men."

If the justice procedure in force in the territory does not

afford a trial by jury, which this section of the Constitution preserved inviolate to the citizens of the state, it is in conflict with the Constitution, and was not extended in force. The question therefore, arises: What constitutes a trial by jury as guaranteed by the Constitution? This question has been under investigation by many courts of the nation, both state and federal, and there is unanimity in the opinions that the right of trial by jury secured by the Constitutions of the various states is simply the right to a trial by jury constituted substantially and with the same elements and incidents as existed when the Constitution was adopted. *Carroll v. Byers et al.* (Ariz.) 26 Pac. 599; *State ex rel. v. Withrow,* 133 Mo. 500; *Byers v. Commonwealth,* 42 Penn. St. 89; *Plimpton v. Somerset,* 33 Vt. 283. "The trial by jury secured to the subject by the Constitution is a trial according to the course of common law and the same in substance as that which was in use when the Constitution was formed." *East Kingston v. Towle,* 48 N. H. 64. See, also, *Copp v. Henniker,* 55 N. H. 179; *Hagany v. Cohnen et al.,* 29 Ohio St. 82.

Judge Cooley, discussing these provisions, said:

"All the state Constitutions preserve the right of trial by jury, for civil as well as for criminal cases, with such exceptions as are specified, and which for the most part consist in such cases as are of small consequence, and are triable in inferior courts. The constitutional provisions do not extend the right; they only secure it in the cases in which it was a matter of right before. But in doing this, they preserve the historical jury of twelve men, with all its incidents, unless a contrary purpose clearly appears." (Cooley's Constitutional Limitations, 589.)

The territory now embraced within the territorial limits of the state was, before the admission of the state, by virtue of section 3, art. 4 of the Federal Constitution, under the jurisdiction of Congress, with power to make all needful rules and regulations with respect thereto. By section 31 of Act of Congress, May 2, 1890, (26 U. S. St. at L., ch. 182, p. 81) the Constitution of the United States was specifically put in force in the Indian Territory. The same act authorized the establishment of an organized

territorial government in Oklahoma Territory. Section 6 confers upon the territorial Legislature power over all rightful subjects of legislation not inconsistent with the Constitution and laws of the United States. See *Bradford v. Territory,* 1 Okla. 366. By these statutory provisions the federal Constitution, if it did not operate *ex proprio vigore* in this jurisdiction before the admission of the state, was put in force and the people were guaranteed by the seventh amendment thereto the right of trial by jury. *American Pub. Co. v. Fisher,* 166 U. S. 464. That amendment provides: "In suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved, * * * " As to what constitutes the "trial by jury" here preserved, has been decided by the Supreme Court of the United States. The jury must consist of twelve men, who shall be unanimous in their verdict. The trial must be under the superintendence of a judge empowered to instruct them in the law and to set aside their verdict if, in his opinion, it is against the evidence or the law. *American Pub. Co. v. Fisher, supra; Capital Traction Co. v. Hof,* 174 U. S. 1. Power of the trial judge to instruct the jury upon the law and to set the verdict aside, if it is against the law or evidence, is as much an essential element of a trial by jury as twelve men and unanimity in their verdict. *Luce v. Garrett* (Ind. Ter.) 64 S. W. 613. Trial by jury in the Indian Territory and Oklahoma Territory at the time of the adoption of the Constitution was attended by all these incidents. It is true that in trials in probate and justice courts of Oklahoma Territory the jury consisted of six men, and the justice of the peace was without power to instruct the jury; and in commissioners' courts of the Indian Territory, while the jury might consist of twelve men, it generally consisted of six, and the United States commissioner was without power to instruct the jury or to hear or grant a motion for new trial; but from all these courts an appeal was allowed by the statute to a court where a trial with all the foregoing elements and incidents could be had, and the mandate of the seventh amendment thereby observed.

*American Pub. Co. v. Fisher, supra; Luce v. Garrett, supra; Dennee v. McCoy* (Ind. Ter.) 69 S. W. 858. As before stated, under the code of civil procedure governing the trial of causes before the justices of the peace in Oklahoma Territory, the jury was composed of six men, and the justice is prohibited from instructing the jury either upon the law or the facts. Sections 5019 and 5028, Wilson's Rev. & Ann. Statutes.

It would follow that if trial by a jury is preserved by the state Constitution, as it existed at the time of the adoption of the Constitution, the jury trial, under the justice procedure, would fail to contain all the essential elements of such trial. The seventh amendment to the United States Constitution is, however, a limitation only upon the powers of the federal government, and does not affect the powers of the state; and the states may provide for a different trial than that preserved by the amendment to the citizens of the United States. The constitutional provision preserving trial by jury in this state specifically eliminates some of the features thereof as it existed before the admission of the state. Section 19, art. 2, after providing that the right of trial by jury shall be and remain inviolate, specifically provides that in county courts and courts not of record, a jury shall consist of six men; and in all civil cases, and in criminal cases less than felonies, three-fourths of the whole number of jurors shall have power to render a verdict. By these provisions unanimity in the verdict is no longer required in any civil case, and the number constituting the jury, as to county courts, is reduced from twelve to six; but, except as to these two important changes in the features of the jury trial as it existed at common law, the preceding clause of the section provides that the trial by jury shall be and remain inviolate. It was evidently intended by such declaration of right that those essential features of the jury trial as existed before the admission of the state, not specifically modified by the Constitution, should be preserved. Since there can be no appeal from the county court to any court where a new trial may be had under the supervision of a judge who can instruct a jury, and

since, under the justice of the peace procedure made applicable
to probate courts of the territory, the judge is denied the power
to instruct a jury, the justice of the peace procedure for the trial
of cases in the county courts would be repugnant to said section
19, art. 2 of the Constitution, and was not extended in force, so
as to be applicable to county courts. If said procedure was not
extended in force in the state for the trial of causes within the
justice courts' jurisdiction, the statute authorizing probate courts
to hold terms at any and all times for the purpose of trying cases
under the justice court procedure is inapplicable; and the case at
bar was tried and judgment rendered at a time not authorized by
law, and for this reason is void.

It follows that the judgment of the trial court should be set
aside and vacated, and the cause is reversed and remanded, with
instructions to proceed in accordance with this opinion.

DUNN, C. J., and TURNER and WILLIAMS, JJ., con-
cur; KANE, J., dissents.

————————

KANE, J., dissenting. I concur in that part of the opinion
of the court covered by the first, second, third and fourth para-
graphs of the syllabus. But, granting that one of the elements
of trial by jury as it existed prior to statehood was the power
of the trial judge to instruct the jury upon the law, still the con-
clusion reached by the court does not necessarily follow. Prior
to statehood the class of cases to which the one at bar belongs were
triable in the probate or justice of the peace courts of the territory
before a jury of six, and such courts were not allowed to instruct
as to the law. Such trials were upheld upon the theory that, as
the laws of the territory provided for an appeal to the district
court where the cause could be tried by a jury of twelve men, a
trial before six men in the justice's court was not unconstitutional.
Section 18, art. 7 of the Constitution, however, provides that jus-
tices of the peace shall have jurisdiction, concurrent with the

county court, in civil cases where the amount involved does not exceed two hundred dollars, and that, until otherwise provided by law, appeals shall be allowed from judgments of the courts of justices of the peace to the county court in the manner provided by the laws of the territory governing appeals from the courts of justices of the peace to the district court; and section 15 of the same article provides that appeals shall be taken from the judgments of county courts direct to the Supreme Court in the same manner as appeals are taken to the Supreme Court from judgments of the district court. One of the effects of these constitutional provisions is to modify trial by jury in this class. of cases as it existed prior to statehood by taking away the right to have such cases tried on appeal in a court empowered to instruct upon the law.

This seems to me to be the only logical conclusion that can be reached, considering the text of the Constitution alone, or in connection with the laws of the territory extended over and put in force in the state by the Schedule. If this construction was adopted, the procedure of the territory of Oklahoma, adopted by the Constitutional Convention for the purpose of vitalizing the Constitution, in order that no inconvenience may arise by reason of the change in the government, would not be repugnant to the jury system adopted by the state for the trial of this class of cases and no hitches in the administration of justice will occur. It was the intention of the members of the Constitutional Convention and Congress, evidenced by the provisions of the Enabling Act and their acceptance by the convention, that there should be no greater lapse in the administration of government of the state in all its departments on account of the change in the form of government than was unavoidable, and said provisions should receive a liberal construction to effectuate that purpose.