December 21, 1911, Enos Nichols, a resident of Pottawatomie county, died in Shawnee, Okla., possessed of an estate consisting of personal property of the value of approximately $300,000. On the petitions of Alex Fisher, husband of Nellie Fisher, and Harriet Nichols Cook; grand-niece and niece, respectively, of Enos Nichols, deceased, the county court of Pottawatomie county on January 29, 1912, appointed Alex Fisher administrator of the estate. Immediately thereafter said Fisher qualified and entered upon the discharge of his duties as administrator. February 11, 1913, Harriet Nichols Cook filed in the county court of Pottawatomie county her petition, in which she claimed to be the sole heir at law and next of kin of Enos Nichols, deceased, and asked to have her rights as such heir determined and adjudicated. Pending said proceedings, and on April 28, 1913, Harriet Nichols Cook died testate in the city of Salem, state of New Jersey. In the month of May following her will was admitted to probate in the surrogate's court of the county of Salem, N.J., and letters testamentary were issued to J. Warren Davis, as executor of said last will and testament. On June 5, 1913, upon ancillary proceedings filed in the county court of Pottawatomie county, J. Warren Davis was appointed executor of the last will and testament of Harriet Nichols Cook, deceased, in Pottawatomie county, and on September 12th, following, as such executor, was substituted as a party to the heirship proceedings instituted in the lifetime of Harriet Nichols Cook. A hearing on said proceedings being had on November 21, 1913, it was found that said Harriet Nichols Cook at the time of her death was the sole heir at law of Enos Nichols, deceased. On the same day, Etta Phebus, of Pittsfield, Ill., filed in the county court of Pottawatomie county, her petition charging that Enos Nichols, deceased, at the time of his death left a will bearing date on or about the 2d day of September, 1898, which will, it was charged, had been "unavoidably lost"; that by the terms of said lost will, the said Enos Nichols made various bequests of his estate to divers parties in different sums. Thereafter an amendment to said petition was filed, and, the issues being joined on said petition, after hearing had on October 5, 1914, judgment was rendered and decree entered by G.A. Outcelt, acting as special judge of the county court, admitting to probate said alleged lost will. From the decree an appeal was prosecuted by the contestants to the superior court of Pottawatomie county, and filed therein November 12, 1914. November 13th following, Willard J. Barnett, of Shawnee, was by the county court appointed administrator of the estate with the will annexed, and duly qualified on November 20, 1914. On January 2, 1915, J. Warren Davis, as executor of the last will and testament of Harriet Nichols Cook, decased, in his own behalf and on the behalf of all the contestants, filed the superior court a motion to transfer the cause to the district court. Among the files included in the case-made is a purported motion of the proponents, Etta Phebus and others, to transfer the cause to the district court of Pottawatomie county on the ground that the Puttawatomie court was without jurisdiction in the premises. This motion does not appear to bear the file mark of the clerk of the superior court. However, on the minute book of the superior court is contained an entry denying the application of the proponents *Page 243 
of the will for leave to withdraw their motion to transfer, and a further entry sustaining the motions filed by "objectors and proponents" and ordering the clerk to transfer the papers forthwith, and to which the proponents excepted. On the same day appears an order transferring said cause to the district court, with instructions to the clerk to transfer the papers and files in the cause, together with a complete transcript of the proceedings had, to the clerk of the district court. The motion of the contestants appears to have been filed in the district court on January 4, 1915, and that of the proponents on January 5, 1915. On March 12, 1915, attorneys for proponents filed in the district court their special appearance and motion to remand the cause to the superior court on the ground that the order of transfer was made on the motion of the contestants. June 10, 1915, a supplemental motion to remand was filed by the proponents on the ground that the superior court had, on May 24, 1915, entered an order vacating and setting aside the order of January 2, 1915, transferring the cause to the district court, and in which subsequent order or judgment of the superior court the appeal prosecuted by the contestants from the decree of the county court was dismissed. Thereafter, on the 10th day of July, 1915, a further motion termed a supplemental petition" was filed in the district court, protesting against the jurisdiction of said court on account of the subsequent proceedings had in the superior court. The several motions and petitions, as well as the objections offered ore tenus, were by the court overruled, and after hearing it was adjudged that the purported lost will of Enos Nichols, deceased, be denied probate, and that the order and decree of the county court probating said will be reversed, vacated, annulled, and set aside; that a certified copy of the findings of fact by the court and the decree be transmitted to the county court, and that said court be ordered and directed to proceed with the distribution of the estate in accordance with the decree of heirship and distribution made November 21, 1913.
The case is brought to this court for review, the only point reserved being that the district court was without jurisdiction in the rendition of its final decree, or, as stated in the record:
"The appeal in this case is taken on questions of jurisdiction only, * * * and the foregoing pages of this case contain a statement of all the proceedings and other matters in the action of the trial court as ore necessary to present all the jurisdictional questions raised in the trial court, and errors complained of, and the jurisdictional question raised in this court for review."
The record upon which it is relied to present the questions of jurisdiction is incomplete, and it is difficult to know with certainty all of the proceedings had either in the superior or district court. The briefs contain no assignments of error as provided by the rules of the court. The form of presentation is therefore very unsatisfactory, and has entailed upon the court much labor that could easily have been avoided. In the original brief of the plaintiffs in error it is said that the challenge to the jurisdiction of the district court is based on three propositions, the statement of which may be abbreviated as follows: (1) That on October 1914, an appeal in a probate proceeding would not lie from the county court to the superior court; (2) that on January 2, 1915, there was no law authorizing the transfer of a probate case from the superior court to the district court; (3) that prior to the time the district court "assumed to act" the superior court had set aside the order of transfer and dismissed the appeal from the county court.
In the reply brief of plaintiffs in error, it is stated that, although there are many questions urged in the brief, "there is but one proposition for this court to consider." The one question referred to, as we understand, is that the cause was never in fact transferred from the superior court; that such being the case, the district court was bound by the subsequent judgment or order of the superior court in which the order of transfer was vacated and get aside and the appeal from the county court dismissed. Many questions affecting the regularity of the proceedings in the county and superior court are discussed in the reply brief. These questions, however, were not urged in the district court, except in so far as they were considered material to the proceedings had by the superior court, and as constituting a legal justification for the purported decree of that court made at the April, 1915, term; that is to say, the proceedings had in the county court, and as we gather, the proceedings of January, 1915, in the superior court were urged in the district court, not as an independent reason why that court should not entertain jurisdiction of the proceedings, but in support of the claim that the district court did not have jurisdiction of an appeal in a probate proceeding brought to it by transfer from the superior court, and on account of the action of the latter court on May 24, 1915, in which *Page 244 
it was attempted to vacate its former order. That the district court had general appellate jurisdiction of the proceedings to probate the will and the contest thereof is not denied. There was therefore no absolute want of jurisdiction over the subject-matter of the proceedings such as could not be waived by a failure to urge in proper season in the trial court. This view renders unnecessary the consideration of numerous questions discussed in the reply brief, and which were before the superior court at the April term, but were not brought before the district court, except by way of arguendo in attempting to urge as a bar to the proceedings therein the judgment of the superior court at the April term. We shall therefore confine our consideration to the jurisdictional questions relied upon by the in error.
1. Would an appeal lie in a probate proceeding to the superior court? Section 2, art. 7. c. 14, Session Laws 1909, p. 181 (section 1798, Rev. Laws 1910), the act creating county superior courts in each county of the state having a population of 30,000 and a city therein of 8,000, and fixing the jurisdiction of such courts, provides:
"Every such court shall have and exercise concurrent jurisdiction with the district court in all proceedings, causes or matters, court in all civil and criminal matters, except in all civil and criminal matters, except matters of probate."
"Concurrent jurisdiction" as defined in said section 2 of the act was defined in Oklahoma Fire Ins. Co. v. Phillip.27 Okla. 234, 111 P. 334, to be that jurisdiction of different tribunals, each authorized to deal with the same subject-matter; and in Rogers et al. v. Bonnett et al.,2 Okla. 553, 37 P. 1078, the Territorial Supreme Court, in defining concurrent jurisdiction, said:
" 'Concurrent' is 'having the same authority, * * * such and such courts have concurrent jurisdiction, that is, each has the same jurisdiction.' "
Also, to the same effect, in Rapalje Lawrence's Law Dictionary, the term is defined to be:
"Concurrent jurisdiction is that of several different tribunals, each authorized to deal with the same subject-matter."
In State ex rel. Strong et al. v. Superior Court of Pottawatomie County et al., 38 Okla. 366, 132 P. 1077, we held that the superior court had jurisdiction of matters of probate in a case appealed from the county court to the district court and transferred on motion of plaintiffs to the superior court, notwithstanding the language of the act respecting jurisdiction over matters of probate. We there said:
"It is intended by the statute that the superior court shall possess the same jurisdiction, both original and appellate, that is possessed by the district court."
In that case it was observed the appeal was not taken directly from the county court to the superior court, but that by section 1974, Compiled Laws 1909, it was made the duty of the judge of the district court, upon motion of the plaintiff in any cause pending in said court, to transfer such cause to the superior court of the county, where the same should then stand for trial as if originally filed therein. The rule announced in the foregoing opinion was adhered to and followed in Parker et al. v. Hamilton, 49 Okla. 693, 154 P. 65. In Oklahoma Fire Ins. Co. v. Phillip, supra, we held that a case pending on appeal in the county court from the judgment of a justice of the peace could be transferred on motion of plaintiff to a superior court, and held, tried, and determined by it. If cases may be transferred from the county court to the superior court, no good reason exists why an appeal in a probate proceeding may not be taken direct from the county to the superior court, unless some statute directs to the contrary, for it must be kept in mind that the two courts, superior and district, have concurrent jurisdiction. As said in Burks v. Walker, 25 Okla. 353, 109 P. 544:
"Where two or more courts have concurrent jurisdiction of the same cause of action, necessarily the statute conferring such jurisdiction gives to the plaintiff the opportunity of selecting the forum in which he shall institute and prosecute his action."
And so it would seem to be the case here, though governed by separate but similar proof the statute. If the superior court has concurrent jurisdiction with the district court, as it clearly has, then it has jurisdiction of an appeal brought to it directly, provided such an appeal will lie to the district court. If the appeal will lie only to the district court, then it cannot be said that the two courts have concurrent jurisdiction. This view has for its support, not only sound reason, but, in principle, the case of Oklahoma Fire Ins. Co. v. Phillip, supra. By giving to the statute the construction to which it is fairly entitled, circumlocution of procedure is avoided, and the losing party may appeal direct to either the district or superior court.
2. Upon the second point, that on January 2, 1915, there was no statute authorizing the transfer of cause from the superior *Page 245 
to the district court, it is insisted that the amendment to section 10, art. 7, c. 14, of the act creating and establishing county superior courts, found in chapter 121 of the Session Laws of 1911, pp. 264, 265, authorizing the judge of the superior court, upon the motion of plaintiff in any cause pending in said court, to transfer such cause by order to the district court, not being contained in the Revised Laws of 1910, there was at the time no statute authorizing the transfer. Iv support of the claim, attention is called to the revisor's note to section 1806, Rev. Laws 1910, by which we are told that it was the purpose of the revisor to strike out the provision authorizing the transfer, for the reason (as claimed by them) that such provision was no longer necessary, and was used only for the purpose of delay. Section 10, art. 7, of the act of March 6, 1909, creating county superior courts, contained no provision for the transfer of a cause from said courts to either the district or county court having concurrent jurisdiction. This omission in the original act was met by the Legislature on March 22, 1911, when section 10 of the act was amended so as to authorize the judge of the superior court, upon motion of the plaintiff in a cause pending in said court, to transfer the same by order to the district or county court, respectively, having jurisdiction of the subject of the action. Section 2 of the act of March 3, 1911. (Session Laws 1911, pp. 70, 71), providing for the adoption of a general code of laws for the state, expressly excepted from the repealing clause any act of the Legislature enacted subsequent to the adjournment of the extraordinary session of the Legislature which convened January 20, 1910, and adjourned March 19, 1910. March 22, 1913, the Legisiature amended sections 1 and 3, c. 39, of the Session Laws of 1910-11 (Session Laws 1913, pp. 116-18). The amendment, however, in no wise affected section 2 of the original act, so that its provisions respecting the repeal of laws not included in the revision, including the exceptions or provisos of the former act, were not affected by the amendment. The act of March 22, 1911, authorizing the transfer of causes from the superior to the district courts, having been enacted at a session of the Legislature subsequent to the adjournment of the extraordinary session of the Legislature which convened in January, 1910, is by the express terms of the act providing for the adoption of a general code of laws, excepted from its operation. That is to say, the act of March 22, 1911, authorizing the transfer of causes, is unaffected by the provisions of either the original or amended act adopting the Revised Laws. Such being the case, the omission to include in the Revised Laws any express authority by which causes may be transferred from the district to the superior court, or from the superior to the district court, cannot be held to affect a statute expressly excluded from the operation of the revision. That it was not the purpose of the Legislature to prevent the transfer of causes from the superior to the district court by the neglect to carry into the revision provisions in respect thereto is not only manifest from the plain provision of the adopting statute, but by section 6, c. 77, Session Laws 1913, providing for the partial abolishment of county superior courts. In this latter act, approved prior to the going into effect of the Revised Laws, it was expressly provided in section 6 that the judges of the superior courts, continued by the act (and which act included the superior court of Pottawatomie county), should upon the motion of the plaintiff, or defendant, or upon the judge's own motion, transfer a cause to the district court, and, upon such transfer being made, the cause should stand for trial in the district court as if it had been originally filed therein. This act, it is true, was declared unconstitutional in Hatfield v. Garnett, 45 Okla. 438,146 P. 24. We may not improperly refer to 2 and 15 of the act of February 10, 1915 (Session Laws, 1915, pp. 20-29), defining the jurisdiction of the superior courts and providing for the transfer of cases from one court to another, as it is, a rule of wide recognition that, when several acts of a Legislature are passed touching the same subject-matter, subsequent legislation may be used to assist in the interpretation of prior legislation upon the same subject. Board of County Commissioners v. Alexander, 58 Okla. 128, 159 P. 311; Cope v. Cope, 137 U.S. 682, 11 Sup. Ct. 222, 34 L.Ed. 832; Tiger v. Western Investment Co. 221 U.S. 286, 31 Sup. Ct. 578, 55 L. Ed. 738. Statutes upon the same subject, though passed on different dates, should be compared, harmonized if possible, and, if not susceptible of a construction which will make all of the provisions harmonize, they should be made to operate together, so far as possible, consistently with the evident intent of the latest enactment.
By tracing the history of the legislation upon the subject of transferring causes of action it will be seen that it was the legislative purpose not to destroy, but to extend, the right of transfer to both parties, or to the court upon its own initiative. Not only this, but to give the right to transfer (with enumerated exceptions) both to the district, *Page 246 
superior, and county courts. The mention of these latter statutes as found in the acts of March 22, 1913, and February 10, 1915, is made only to show that the Legislature at all times intended that the right to transfer causes of action should not be taken away. Our conclusion is rested, however, upon the ground that the Revised Statutes expressly exempted from its operation the act of March 22, 1911.
3. Upon the third point relied upon, that before the district court had "assumed to act in the matter" the superior court had set aside the order transferring the cause to the district court and had dismissed the appeal, the record sufficiently discloses that both at the time the jurisdiction of the court was invoked and the order made the cause was pending in the district court; hence the superior court was without jurisdiction to make the order. This we say from the following orders, entries, proceedings, and admissions appearing in the record: The motion of the contestants to transfer which was filed in the district court on January 4, 1915; that of the proponents, filed in the district court January 5, 1915; the objection of proponents to the jurisdiction of the superior court filed therein November 12, 1914, and in the district court January 4, 1915; the entries in the minute books of the superior court and the order of transfer to the district court; from the statement of counsel, made on July 7, 1915, in objecting to the jurisdiction of the district court, in which it was admitted that the cause was then in the district court on "attempted transfer"; and from the allegation contained in the supplemental petition, filed July 10, 1915, in the district court, in which it is stated that on "the 2d day of January, 1915, said papers and files in said cause were taken from the office of the clerk of the superior court and lodged and filed in the district court by F.H. Reily, one of the attorneys for the objectors"; also from the numerous objections made to the jurisdiction of the district court, both written and oral, on account of the transfer made to it pursuant to the order of the superior court, January 2, 1915. If, then, the cause had been transferred to the district court, and the proceedings had, both in procuring and making of the order of transfer, were authorized by law, the purported judgment of the superior court made at a subsequent term thereof was invalid, and such judgment was coram non judice. The order of January 2, 1915, transferring the cause, was made at the December term of the court. Just when it was first sought to have this order vacated is not clear; in fact, the record is silent, except that it was at a subsequent term of the court, and after a part, at least, of the files and papers in the case had been transferred to, lodged, and filed in the district court. This plaintiff in error, as we understand, admit. While it would have been a very easy matter to have had the record show just when the case was docketed in the district court, and when the subsequent proceedings were taken in the superior court, for some reason these important facts have been overlooked, though from the file marks on certain of the pleadings, admissions made, and appearances entered there is no room to doubt that the district court had acquired jurisdiction of the cause when the subsequent proceedings were had in the superior court. It is a rule widely recognized that jurisdiction will be presumed as to courts of general jurisdiction, such as the district courts in this state, unless the contrary appears of record. 11 Cye. 691, 692. Also, it will be presumed that every step necessary to give jurisdiction has been taken, although this presumption may be rebutted by extrinsic evidence, as when the jurisdiction may be inquired into. Applegate v. Lexington Carter Co. Min. Co.,117 U.S. 255, 6 Sup. Ct. 742, 29 L.Ed. 892; Voorhees v. Jackson, 10 Pet. 449, 9 L.Ed. 490. Acts or admissions affecting the validity of the proceedings must be affirmatively shown. The manner of the transfer of the files to the district court was irregular, as best we can gather from the record. Indeed it seems that a part of the files from the county and superior courts were not lodged with the district court until in the month of June, prior to the trial in July. This omission, while an irregularity, did not affect the jurisdiction previously acquired by the district court. Counsel for plaintiffs in error at all times recognized that the cause had been transferred to the district court, though they persistently urged that the district court was without jurisdiction. As early as March 12, 1915, they filed in the said court their motion to remand the cause to the superior court claiming that the order of transfer was void and that the district court had no jurisdiction in the premises; the order of transfer having been made on the motion of the contestants. We think that by the appeal from the county court the jurisdiction of the superior court attached, and, the cause having been transferred to the district court, and that court having acquired jurisdiction, the superior court was divested of all further jurisdiction over the proceedings. Simpkins v. Parsons. 50 Okla. 786, 151 P. 588. This we held in State ex rel. Nichols et al. v. Johnson, County *Page 247 
Judge, 58 Okla. 239, 158 P. 1129, which action arose out of the final judgment of Judge Watts, made July 30, 1915, in the will contest proceedings under consideration, and in which it was said that the order of the superior court was made after the transfer of the cause to the district court. Jurisdiction generally could not, at the same time, be both in the superior and district courts. By the transfer to the district court, the superior court lost jurisdiction. State v. Reid, 18 N.C. 377, 28 Am. Dec. 572; Two Rivers Mfg. Co. v. Beyer, 74 Wis. 210,42 N.W. 232, 17 Am. St. Rep. 131; State ex rel. Nichols et al. v. Johnson, County Judge, supra; 7 R. C. L. 1067; 11 Cyc. 690. And the fact that a part of the files, either from the county or superior court, were not with other files lodged with the district court will not serve to defeat the jurisdiction of the latter court.
4. In the reply brief of plaintiff in error it is urged that contestants were not authorized by law to file a motion to transfer the cause to the district court, and that the act authorizing the transfer is unconstitutional. The act of 1911, as in the earlier act of 1909, only authorized the transfer to be made on the motion of the plaintiff. In Burks v. Walker,25 Okla. 353, 109 P. 544, the same attack was made on the 1909 statute as is now urged against the later act. It is unnecessary to repeat or extend the reason there given for refusing to hold the statute invalid. As we are satisfied with the conclusion reached in that case, we decline to declare the act unconstitutional. In answer to the first objection, it is sufficient to direct attention to section 6210, Rev. Laws 1910, which provides that in the trial of contest proceedings "the contestant is plaintiff, and the petitioner is defendant." As the motion to transfer was filed by and on behalf of the contestants of the alleged lost will, it is difficult to understand how it can be seriously urged that they were not entitled to the position given them in the statute, and to any rights arising therefrom.
5. Was the district court of Pottawatomie county legally convened and in session during the time beginning with July 19th and ending July 30th, the period occupied in the trial of the case? From the record it appears that the proponents' original and supplemental motions to remand the cause to the superior court were overruled on June 10, 1915, the order being made by Judge Bowles, who had been assigned to bold court in Pottawatomie county. In the order of court overruling the motions, it was ordered that the motions of the proponents of the will to suppress depositions be continued until July 19, 1915; also, at the request of the contestants, the cause was set for trial on the same day, to wit, July 19, 1915, whereupon court adjourned until July 7, 1915, the same being a day of the July term of court. July 7th court convened pursuant to adjournment, Judge Chas. G. Watts presiding. After objections to the court's entertaining Jurisdiction of the subject-matter of the action, court adjourned until July 8th. On the day last named, court again convened and adjourned until July 9, 1915, on which day the court again overruled the objections of the proponents to its jurisdiction, and at the same time granted them leave to withdraw their depositions for the purpose of attaching notice and certificate. Also it was ordered that the stenographer make a transcript of the record and file the same with the clerk on July 19, 1915; thereupon the record shows that the court adjourned subject to call. On July 19, 1915, court convened, Judge Chas. G. Watts presiding, and the cause came on for trial. Whereupon the proponents of the will filed their further written objection to the trial of the cause in the district court, on the ground that the court was without jurisdiction. The records convening the session show the following proceedings had:
"July 19th, 1915.
"Now court convened pursuant to adjournment at 10:30 a. m., on the 19th day of July, 1915, with Hon. Chas. G. Watts, Judge, presiding. Other officers present, R.L. Flynn, court clerk; Nannie Saxon, reporter; Chas. W. Friend, county attorney; F.E. Romberg, sheriff, and J.T. Jones, bailiff. Public proclamation of the opening of said court having been made pursuant to orders, the following proceedings were had" — order overruling the motion to remand and exceptions thereto; order continuing the hearing on the motion of the proponents to suppress depositions; withdrawal of the motion of the contestants to suppress depositions of witnesses Phebus and Kelly; application of the proponents for a jury and order denying same; and, finally the application of the proponents to file supplemental petition, followed by the order adjourning the court until the following day. Thereafter the parties appeared and the trial was entered upon and proceeded with from day to day until July 30th. That at the close of the trial proponents filed their motion for findings of fact and conclusions of law, and on the same day judgment was rendered in favor of the contestants, and the journal entry thereof filed in the district court August 4, 1915. *Page 248 
From the time court convened on July 19, 1915, pursuant to adjournment, and throughout the progress of the proceedings had, while the proponents at all times objected to the court's jurisdiction, no objection was urged that the court was not legally in session. It appears that the preliminary orders in the cause were made by Judge W.M. Bowles. This was pursuant to assignment of Chief Justice Kane. While the record fails to show how it came about that Judge Chas. G. Watts held court in Potta watomie county in July, 1915, and tried the cause in question, we know from the records in the office of the clerk of this court that orders assigning Judge Watts to hold court in Pottawatomie county were made by Chief Justice Kane as follows: On July 3d to hold court July 7th and 8th; July 8th to hold court July 9th; July 17th to hold court for one week, beginning July 19th; July 24th a further order to hold court for one week, beginning July 26th. These several orders of the Chief justice were made under authority of section 9, art. 7, Const. The objection that the district court was not legally convened in the month of July, and that its sessions held during said month were illegal by reason of the order of adjournment made July 9, 1915, is made for the first time in this court. No question is made that the June term of the district court was not duly convened; only that on account of the language of the order the court had adjourned sine die. Whatever may be the effect of an order of adjournment subject to call, as an abstract proposition, when it appears, as here, from an examination of the entire proceedings had, that it was not the purpose of the court to end the term, and the parties appear at a subsequent day thereof, and, without objection, proceed to trial, the order of adjournment should be read in connection with the previous order of adjournment, the contemporaneous order, and the proceedings had on the reconvening of court on the day to which the adjournment was originally taken. From what transpired, as disclosed by the record, and from what we know judicially, respecting the orders of the Chief justice, it is difficult to escape the conclusion that the objection now made is an afterthought. It is not the policy of the courts to permit parties to speculate on the outcome of a trial, and afterwards on appeal raise for the first time the question that the court was not legally convened. It is possible that cases may arise wherein a different rule should be applied, but such is not the case under consideration. The trend of modern judicial opinion is to construe the law, if possible, so as to uphold the sessions of courts actually transacting business. St. Louis S. F. R. Co. v. James et al., 36 Okla. 196, 128 P. 279; Tucker v. State,10 Okla. Cr. 565, 139 P. 998; Brown v. State,11 Okla. Cr. 498, 148 P. 181. The case, in view of the facts to which we have called attention, is not ruled by the decisions of this court in Irwin v. Irwin, 2 Okla. 180, 37 P. 548; Baker v. Newton, 27 Okla. 436, 112 Pae. 1034. An adjourned term of court is but a prolongation of the previous term, and it has been held that the court during such term has the same power that it had during the previous term to make the record or such previous term conform to the truth. Keith v. State, 91 Ala. 2, 8 So. 353, 10 L. R. A. 430. When the court met on July 19, 1915, it appears that it "convened pursuant to adjournment." The effect of the order reconvening the court, under all the attending circumstances, furnishes strong grounds for belief that at no time was there a sine die adjournment of the June term of court. Therefore the objection that the court was not legally convened must be rejected. Cozine v. Hatch,17 Neb. 694, 24 N.W. 389; Smurr v. State, 105 Ind. 125, 4 N.E. 445; Hoyne v. State, 39 Ga. 718; Cook v. Skelton, 20 Ill. 107, 71 Am. Dec. 250.
We regret to note in the reply brief of plaintiffs in error, prepared by nonresident counsel, a most unjust and unfounded criticism of the trial court. As we understand, the apology offered for the condition of the record attempts to place the responsibility therefor, in a large measure, on the action of the trial judge. There is nothing in the record that will, in the slightest degree, warrant the statement. If there has been delay in administering on the estate of Enos Nichols, deceased, it is not attributable to the courts. If in the trial, or if at any time during the proceedings, full opportunity was not given the proponents of the will to Present their case, or if during the trial prejucicial errors were committed, this court has, cial errors were court has at all times, been open to a review of such proceedings. As these proceedings are not before us, they cannotl, of course, be examined into.
The judgment of the trial court is affirmed.
All the Justices concur, except KANE, J., who is absent. *Page 249