GROUND *et al.* v. DINGMAN *et al.*

No. 2022.   Opinion Filed November 12, 1912.

(127 Pac. 1078.)

1.   INDIANS—Indian Lands—Death Before Enrollment—Descent and Distribution of Allotment. The descent and distribution of the allotted lands of a citizen of the Creek Nation, who was living on April 1, 1899, and who died after the passage of the act of March 1, 1901, c. 676, 31 St. at L. 861, after which she was enrolled and certificate of allotment issued in her name, and later patent to the lands therein described issued to her heirs, is, by reason of section 28 of said act, governed by the law of descent and distribution of the Creek Nation, to be applied as if the deceased had received title to her allotment during her lifetime and died seised thereof.

2.   SAME—Descent. Where T., a citizen of the Creek Nation, living on April 1, 1899, died intestate October 14, 1899, leaving her surviving her husband and their infant child, who died January

1, 1900, without issue, and where, on April 15, 1900, the husband died intestate and without issue, leaving him surviving as his only heirs at law his two sisters, and where, after the passage of the act of March 1, 1901, c. 676, 31 St. at L. 861, T. was duly enrolled and certificate of allotment issued in her name, and later a patent to the lands therein described issued to her heirs, **held,** that upon her death said allotment went, by virtue of section 28 of said act, one-half to the father and one-half to the infant son; and that upon the death of the latter the whole estate went to the father, and upon the death of the father to his two sisters, the plaintiffs, as his only heirs at law.

(Syllabus by the Court.)

*Error from District Court, Creek County;*
*W. L. Barnum, Judge.*

Ejectment by Jennetta Ground and others against Ross B. Dingman and others. Judgment for defendants, and plaintiffs bring error. Reversed and remanded.

*J. A. Baker, Taylor, Pruiett & Sniggs,* and *George C. Beidleman,* for plaintiffs in error.

*R. A. Kleinschmidt, W. C. Franklin, P. J. Carey, Mann & Jackson, Thompson & Smith,* and *Hughes & Miller,* for defendants in error.

TURNER, C. J. This is an action of ejectment brought by plaintiffs in error, plaintiffs below. From the opening statement of their counsel, at the close of which the court sustained "a demurrer to the facts as proposed to be proved by plaintiff," interposed by "the defendants other than Charles W. Mandler," it appears that Susan Thompson, or Stidham, a citizen of the Creek Nation, died intestate on October 14, 1899, leaving her surviving her husband, Charley Stidham, and their infant child John; that about January 1, 1900, the child died without issue, and on April 15, 1900, Stidham also died intestate and without issue, leaving him surviving as his only heirs at law his two sisters, the plaintiffs in this cause; that on May 15, 1901, said Susan Thompson was duly enrolled, a certificate of allotment issued in her name, and later a patent to the S. ½ of the S. ½ of section 26, township 18 N., range 11 E., issued to her heirs. Alleging that such they are under the Creek law of descent and distribution, plaintiffs

bring this suit and deraign their title as stated. Defendants deraign their title to said allotment through the brother and sisters and the son of a deceased sister of said Susan Thompson, her surviving.

Section 28 of the act of Congress, dated March 1, 1901. entitled "An act to ratify and confirm an agreement with the Muskogee or Creek Tribe of Indians," etc. (31 St. at L. 869, c. 676), provides:

"All citizens who were living on the 1st day of April, 1899, entitled to be enrolled under section 21 of the act of Congress approved June 28, 1898 [Act June 28, 1898, c. 517, 30 St. at L. 495], entitled 'An act for the protection of the people of the Indian Territory and for other purposes,' shall be placed upon the rolls to be made by said Commission under said act of Congress and if any such citizen has died since that time, or may hereafter die, before receiving his allotment of lands and distributive share of all the funds of the tribe, the lands and money to which he would be entitled if living shall descend to his heirs according to the laws of descent and distribution of the Creek Nation, and be allotted and be distributed to them accordingly."

Section 6 of the Creek law of descent and distribution, in force at that time, provided:

"Be it further enacted that if any person die without a will, having property and children, the property shall be equally divided among the children by disinterested persons, and in all cases where there are no children the nearest relation shall inherit the property."

And section 8:

"The lawful or acknowledged wife of a deceased husband shall be entitled to one-half of the estate if there are no heirs, and an heir's part if there should be other heirs, in all cases where there is no will. The husband surviving shall inherit of a deceased wife in like manner."

It is nevertheless contended by plaintiffs that descent was cast at the time of the death of Susan Thompson, and hence they are entitled to her allotment through the husband and son, as stated; and by defendants that descent was cast as of the date of said agreement, and hence, as the child and husband of Susan Thompson were then dead, the allotment descended to them.

Although seised of no estate of inheritance therein, that this land went, whether by descent or purchase it is immaterial to say, by virtue of section 28, *supra,* to the heirs of Susan Thompson, as designated by the Creek law, *supra,* in being at the time of her death, is no longer an open question in this jurisdiction.

In *Barnett et al. v. Way et al.,* 29 Okla. 780, 119 Pac. 418, Cita Barnett, an enrolled citizen of the Creek Nation, selected her allotment under section 11 of the Curtis Act, and died before the ratification of the original Creek treaty (Act March 1, 1901), wherein, by section 6, her allotment was ratified to her heirs. It was there held that the Creek law of descent and distribution governed the devolution of the estate, pursuant to section 28, *supra;* that her father her surviving took her allotment as though she had received title thereto during her lifetime and died seised thereof. In the syllabus the court said:

"The descent and distribution of the allotted lands of. an enrolled Creek Indian, who died before the ratification of the original Creek treaty (Act March 1, 1901, c. 676, 31 St. at L. 861), and who had during her lifetime allotted to her, under section 11 of the Curtis Act (Act June 28, 1898, c. 517, 30 St. at L. 495), the use and occupancy of the surface of the allotment, which was thereafter, by section 6 of the original Creek treaty, ratified and deed issued to her heirs therefor, is, by reason of section 28 of the original Creek treaty, regulated and controlled by the law of descent and distribution of the Creek Nation. In determining who are the heirs of a deceased enrolled Creek Indian, who, during her lifetime, received the allotment of the use and occupancy of an allotment, which, after her death, was ratified to her heirs by virtue of section 6 of the original Creek treaty (Act March 1, 1901, c. 676, 31 St. at L. 861), the laws of descent and distribution of the Creek Nation are to be applied as if the deceased Indian had received title to her allotment during her lifetime and died seised thereof."

As there is no substantial difference between the facts in that case and this, and in neither did the allottee die seised of an estate of inheritance, the law there announced, in effect, that, having died before receiving her allotment, the land went to her heirs under the Creek law precisely as though the allottee was so seised at the time of her death, will be followed here.

In *Morely et al. v. Fewel*, 32 Okla. 452, 122 Pac. 700, the facts were that Minnie Solander, the allottee, a citizen of the Creek Nation living on April 1, 1899, and duly enrolled as such, died intestate on October 8, 1899, leaving her surviving George A. Solander, her husband, and Hettie L. Solander, her child, who died intestate, without issue, December 19, 1899; that Phoebe Trussler was the only sister of Minnie Solander, who left no brother surviving, nor the descendants of any brothers or sisters; that on December 3, 1901, the Commission to the Five Civilized Tribes set apart the allotment of Minnie Solander, to which a patent was issued in the name of her heirs. The only question in that case was: Did George A. Solander inherit the lands allotted to the heirs of his wife, Minnie Solander? This court, speaking through Rosser, C., following the rule laid down in *Barnett v. Way, supra,* held that he did. In passing, the court said:

"The right of the heirs of Minnie Solander to select her allotment after her death was created by section 28 of the original Creek agreement. She had no title to the lands at her death, and it only came into existence after the original Creek agreement became the law; and the right in her heirs to have it selected after her death was created by the provisions of section 28 of that agreement. As the right was created by that section, it was competent to provide in the section who were the persons entitled to take under its provisions. By its terms the same persons are entitled to take as heirs of Minnie Solander as would have been entitled, had she selected the allotment in her lifetime, and lived until after the original Creek treaty took effect, and had then died seised of the land, leaving the same heirs, bearing the same relation to her and to each other at that time as they actually bore at the actual time of her death. If the land had been allotted to her and she had died while the original Creek treaty was in force, leaving George A. Solander and Hettie L. Solander, husband and daughter, living, her heirs would have been her husband, George A. Solander, and her daughter, Hettie L. Solander. Then, if Hettie L. Solander had died afterwards, without husband or issue, while that treaty was in force, her father would have inherited her land. The fact that George A. Solander was a white man would not have prevented him from inheriting as heir to his wife, nor as heir to

his daughter. *De Graffenried v. Iowa Land & Trust Co.*, 20 Okla. 687, 95 Pac. 624."

We are therefore of opinion that, as Susan Thompson was a citizen of the Creek Nation living on April 1, 1899, and was enrolled as such and died before receiving her allotment, the devolution thereof fell squarely within the provisions of section 28, *supra,* which means that on the happening of that event, notwithstanding the fact that she could not and did not die seised therein of an estate of inheritance, the lands went to her heirs *in esse* at the time of her death, as designated by and according to the laws of descent and distribution of the Creek Nation, precisely in the same manner as though she had died seised thereof. It follows that under the Creek law made applicable by said section and construed by us in the de Graffenried case and the Barnett case, *supra,* at the time of her death the allotment of Susan Thompson went one-half to the father, Charles Stidham, and one-half to their infant son; and that upon the death of the latter the whole estate went to the father, and upon the death of the father to the plaintiffs as his sole heirs at law.

The cause is accordingly reversed and remanded for a new trial as to all the defendants, including Charles W. Mandler, whose demurrer was sustained to the petition. This for the reason that when the petition stated in substance, as it does, after describing the land sued for, that plaintiffs have the legal estate in fee simple and the equitable estate therein, and are entitled to the immediate possession thereof, that defendants unlawfully keep them out of possession and unlawfully withhold the same from them, the same states facts sufficient to constitute a cause of action pursuant to Wilson's Rev. & Ann. St. 1903, sec. 4788. It is so ordered.

All the Justices concur, except DUNN, J., absent, and not participating.