## HOMER v. LESTER et al.

No. 12882—Opinion Filed June 5, 1923.

Rehearing Denied Oct. 23, 1923.

(Syllabus.)

### 1. Courts —Jurisdiction —Determination of Heirship.

Where the deceased intestate or testator has been dead for a period of three years or more and there is no lawful ground for administration proceedings in the county court, an alleged heir or record claimant desiring to have a determination of heirship and desiring to bring in third persons, who are not heirs but who claim through alleged heirs, must proceed either under the act of Legislature approved April 4, 1919, House Bill 445, in the district or superior court by a suit in ejectment or bill to quiet title, as the circumstances mould the remedy.

### 2. Indians — Heirship — County Courts — Jurisdiction.

Under the heirship act of Congress, approved June 14, 1918 (40 Stat. at L. 606), the county courts have jurisdiction to determine the restricted heirs of an allottee or a deceased member of one of the tribes to whom an allotment was made under section 22 of the Choctaw-Chickasaw Treaty, approved by act of Congress July 1, 1902 (32 Stat. at L. 641).

### 3. Same—Jurisdiction—Parties.

The heirship act of Congress approved June 14, 1918, does not authorize the petitioner or the county court in the heirship proceedings to bring in before the court any person other than a person claiming to be an heir of the deceased allottee.

### 4. Same—Conclusiveness of Decree.

The judgment of the county court (or the district court on appeal) in the proceedings authorized by the act of Congress of June 14, 1918, is not binding on or res adjudicata as to any person claiming an interest in or title to the allotment acquired by a conveyance or deed or contract executed prior to the act of June 14, 1918.

### 5. Courts—County Courts—Act Conferring Jurisdiction Relating to Title to Real Estate—Constitutionality.

That part of Senate Bill No. 60 entitled, "An Act to provide for determination of heirship in all cases of deceased persons," etc., approved April 4, 1919, attempting to confer jurisdiction on the county courts to render a judgment binding on record claimants, that is, persons who claim title to the land by purchase from heirs or alleged heirs, "where the time limited by law * * * for the institution of administration proceedings has elapsed without their institution, as well as in cases where there exists no lawful ground for the institution of administration proceedings in said court," violates section 12 of article 7 of the Oklahoma Constitution, and is void.

Error from District Court, Carter County; B. C. Logsdon, Judge.

Action by Nicie Homer against D. B. Lester et al. to recover possession of land. Judgment for defendants, and plaintiff appeals. Affirmed.

Etheredge & Arnett, Sigler & Jackson, and J. M. Willis, for plaintiff in error.

Cottingham, Hayes, Green & McInnis, Ledbetter & Hudson, H. A. Ledbetter, and W. A. Ledbetter, for defendants in error.

KENNAMER, J. Nicie Homer, plaintiff in error, plaintiff below. commenced this suit in the. district court of Carter county on February 6, 1921, against defendants in error, D. B. Lester, M. I. Lester, W. A. Ledbetter, Richard M. Lester, J. R. Cottingham, S. T. Bledsoe, J. S. Mullen, J. W. Hoffman, W. B. Jansen, W. E. Hodges, P. C. Dings, Max Westheimer, David Daube, Hugh W. McGill, trustee, and the Coline Oil Company, a corporation, to recover a certain described tract of land allotted to the heirs of Thomas J. Taylor as the land which Thomas J. Taylor would have been entitled to if living, as a full-blood Choctaw Indian. Westheimer and Daube filed disclaimers, and they are out of the case.

The pleadings and the evidence, including the agreed statement of facts, show that Thomas J. Taylor died in December, 1902, intestate, in what is now McCurtain county, Oklahoma, prior to having made any selection of any allotment; that Thomas J. Taylor was enrolled as a full-blood Choctaw Indian on the final and approved rolls of the Choctaw Nation; that after his death an administrator was appointed by the proper United States court for the Indian Territory; that the land involved in this case was selected by said administrator, which deceased would have been entitled to if living, and certificates of allotment issued dated December 21, 1903, and January 21, 1904, and proper patents were thereafter duly executed by the tribal authorities and approved by the Secretary of the Interior: that in the years 1904 and 1905 the brothers and sisters of Thomas J. Taylor, with his widow, Elsie Bohannon, joining them, executed and delivered to the defendants general warranty deeds for a valuable consideration purporting to convey the defendants the allotment of land in controversy; that Thomas J. Taylor left surviving him no child or descendant of any child, unless it shall be adjudged that plaintiff, Nicie Homer, is a child of Thomas J. Taylor; that defendants, under said deeds from the widow and brothers and sisters of Thomas J. Taylor, entered into immediate possession of the land and have been in continuous possession thereof ever since the years 1904 and 1905, claiming to be the owners under the deeds from the widow and brothers and sisters; that administration proceedings on the estate of Thomas J. Taylor, deceased, were pending in the county court of McCurtain county on the 7th day of January, 1920, but when such administration proceedings were commenced is not disclosed, nor does the record show the disposition of the administration appointment made by the United States court for the Indian Territory prior to statehood; that on January 7, 1920, plaintiff, Nicie Homer, filed a petition in the county court of McCurtain county entitled a petition for the determination of the heirship of Thomas J. Taylor, deceased, and alleged that Taylor died in December, 1902, in that part of the Indian Territory subsequently made McCurtain county, Okla.: that Taylor left no debts or personal property of any description, and that it was not necessary to administer his estate other than to determine his heirs; that an administrator had been appointed and administration proceedings were then pending in McCurtain county; that at the time of his death Taylor was the owner of the land therein described and left surviving him as his sole and only heir petitioner, Nicie Homer, nee Taylor, his daughter, a full-blood Choctaw Indian; that D. B. Lester and others "claim some right, title or interest in and to the land of which said Thomas J. Taylor died the owner of, the extent and interest claimed by them being to petitioner unknown. but that petitioner is informed and believes that said parties claim to own some interest in said lands by purchase by, through, or under or from some person or persons other than the said Thomas J. Taylor, deceased, and that they, or some of them, claim to own some right, title, or interest in or to the lands, of which said Thomas J. Taylor died the owner of, as heirs at law of the said Thomas J. Taylor, deceased."

Plaintiff in the petition for heirship determination also alleged that the persons claiming to be an heir or heirs of Thomas J. Taylor, deceased, were not his heirs, but that "there are other persons claiming to own an interest in and to said property of" said Thomas J. Taylor, "through, or under some person or persons claiming to be heirs at law of said Thomas J. Taylor, but the names, addresses, and interest claimed by them, or either of them, are to the petitioner unknown;" that petitioner with due diligence was unable to ascertain whether the unknown heirs of Taylor and the unknown claimants to his estate were living or dead,

and if dead, who are their heirs, administrators, executors, or devisees. To that petition to determine heirship plaintiff attached the following prayer:

"All persons claiming an interest in or to the lands of which the said Thomas J. Taylor died the owner of, either as heirs at law, or record claimants by, through, or under any person, or persons, claiming to be an heir or heirs of Thomas J. Taylor, deceased, either immediate or remote, be required to submit to the court evidence, as to who are the heirs at law of Thomas J. Taylor, deceased, and that upon the hearing the court determine as a matter of fact who are the heirs at law of the said Thomas J Taylor, deceased, as of the time of his death, and that the court determine as a matter of fact that the petitioner, Nicie Homer, nee Taylor, is the sole and only heir at law of the said Thomas J. Taylor, deceased, as of the time of his death."

The defendants in error, as respondents to the heirship petition in the McCurtain county court appeared in the proceedings on the 8th of March, 1920, and filed an answer, denying that petitioner was the daughter of Thomas J. Taylor, and averred that Thomas J. Taylor died leaving no issue or descendants of issue, but left surviving him as his sole and only heirs his brothers and sisters, naming them, from whom defendants in error obtained deeds in 1904 and 1905; respondents averred that the petitioner was barred by the statutes of limitations, and denied that the county court had jurisdiction to settle the estate or determine the heirship, and denied that Senate Bill No. 60 of the Oklahoma 1919 Session Laws (p. 41) was valid and constitutional or conferred any power on the county court to determine respondent's title to the land in question, and prayed that the proceedings be dismissed, but that if the court did have jurisdiction, the judgment be entered finding petitioner not to be the heir. On the 29th of March, 1920, by agreement, respondents withdrew their answer and filed a demurrer on the ground that the petition did not state facts sufficient to constitute a cause of action against defendants, and did not state sufficient facts to warrant a hearing, and also that the petition showed on its face that the court was without jurisdiction to determine the heirship. The demurrer was overruled, and the hearing had, resulting in a judgment on April 1, 1920, in favor of petitioner, finding that she was the sole and only heir of Thomas J. Taylor, "and that as the sole and only heir at law of the said Thomas J. Taylor, deceased, the plaintiff is entitled to have distributed to her his said estate." Defendants excepted and appealed to the district

court, in which a trial was had, resulting in an affirmance of the county court's judgment on the 29th day of July, 1920. No appeal was taken from the judgment of the district court.

On the trial of this case in the district court the plaintiff in error offered in evidence the judgment of the county court and the judgment of the district court in the heirship proceedings, to which defendants objected. The trial court sustained the objection, and judgment was rendered in favor of defendants, there being no further evidence offered on behalf of the plaintiff.

The only question for determination on this appeal is whether or not the trial court erred in excluding the judgments of the county court and the district court in the heirship proceedings as conclusive evidence that plaintiff was the sole and only heir of Thomas J. Taylor, deceased. If the heirship judgment was admissible in evidence and conclusive, then plaintiff is entitled to recover the land, as defendants claim title only through deeds from other persons claiming to be the heirs of Thomas J. Taylor, unless the plea of the statute of limitations can be sustained in defendant's favor.

We will first consider the question, Was the judgment of the county court of McCurtain county, as affirmed by the district court, in the heirship proceedings, conclusive evidence as against these defendants that plaintiff was the sole and only heir of Thomas J. Taylor, deceased? Plaintiff in error claims that the act of Congress approved June 14, 1918, entitled "An Act to provide for a determination of heirship in cases of deceased members of the Cherokee, Choctaw, Chickasaw, Creek and Seminole Tribes of Indians in Oklahoma," etc., conferred jurisdiction upon the county court to render final and conclusive judgment (subject to appeal) determining who are the sole and only heir or heirs of Thomas J. Taylor, and that such decree and finding is binding on all the world.

This court, in State ex rel. Miller v. Huser, 76 Okla. 130, 184 Pac. 113, held that Congress had the power by the act approved June 14, 1918, to constitute county courts of Oklahoma "federal agencies and as administrative officers, as distinguished from courts exercising strictly judicial powers", to determine (subject to appeal as provided in the act) who are the restricted heirs of deceased allottees. Since the opinion in State ex rel. Miller v. Huser, supra, the

United States Supreme Court, in United States v. Bowling, 256 U. S. 484, sustained the power of Congress to confer final jurisdiction upon the Secretary of the Interior to determine the heirship to restricted allotments. In that case the court pointed out two classes of allotments, one class of allotments being those where the government issues a trust patent reserving title in the federal government, and the other where the patent passes to the allottee the legal and equitable title subject to restrictions against alienation.

In McKay v. Kalyton, 204 U. S. 463, 51 L. Ed. 566; Hallowell v Commons, 210 Fed. 793, 239 U. S. 506; Pel-Ata-Yakot v. United States, 188 Fed. 387; Bond v United States, 181 Fed. 613; Parr v Colfax, 197 Fed. 302, and United States v. Kelly, 97 Fed. 460, the Secretary's power to determine heirship seemed to have been predicated on the theory that so long as the legal title remained in the federal government Congress had authority to authorize the Secretary to ascertain the heirs entitled to receive the legal title at the end of the trust period. But in United States v. Bowling, supra, the court sustained the power of Congress to confer authority upon the Secretary of the Interior to determine the heirs to restricted allotments although the legal and equitable title had passed out of the federal government and out of the tribe.

It is repeatedly stated by this court in State ex rel. Miller v. Huser, supra, that the county courts, in exercising the authority conferred by the act of Congress approved June 14, 1918, "are acting merely as federal agencies and as administrative officers, as distinguished from courts exercising strictly judicial powers", and that it is therefore "equally clear that the laws of the state cannot be asserted to defeat or impair the operation of the act." (See 76 Okla., page 141, 184 Pac. 118.)

The act of Congress approved June 14, 1919, is as follows:

"Be It Enacted by the Senate and House of Representatives of the United States of America in Congress Assembled, That a determination of the question of fact as to who are the heirs of any deceased citizen allottee of the Five Civilized Tribes of Indians who may die or may have heretofore died, leaving restricted heirs, by the probate court of the state of Oklahoma having jurisdiction to settle the estate of said deceased, conducted in the manner provided by the laws of said state for the determination of heirship in closing up the estates of deceased persons, shall be conclusive of said question: Provided, That an appeal may be taken in the manner and to the court provided by law, in cases of appeal in probate matters generally: Provided, further, That where the time limited by the laws of said state for the institution of administration proceedings has elapsed without their institution, as well as in cases where there exists no lawful ground for the institution of administration proceedings in said courts, a petition may be filed therein having for its object a determination of such heirship and the case shall proceed in all respects as if administration proceedings upon other proper grounds had been regularly begun, but this proviso shall not be construed to reopen the question of the determination of an heirship already ascertained by competent legal authority under existing laws; Provided, further, That said petition shall be verified, and in all cases arising hereunder service by publication may be had on all unknown heirs, the service to be in accordance with the method of serving nonresident defendants in civil suits in the district courts of said state; and if any person so served by publication does not appear and move to be heard within six months from the date of the final order, he shall be concluded equally with parties personally served or voluntarily appearing."

An examination of this act of Congress fails to disclose any intention to confer upon the county courts jurisdiction to try title of land, it being clearly the intent of the act to empower the county courts, as an incident to the administration of an estate of a restricted Indian leaving restricted heirs, to determine the beneficiaries of the estate; that is, the heirs as between the petitioner for determination and all other persons claiming to be heirs. There is not the slightest indication that it was intended to confer upon the county courts any authority to render any judgment conclusive against third parties or persons claiming the land by purchase prior to the act from alleged heirs, who were unrestricted at the date of their conveyance.

The act says: "That a determination of the question of fact as to who are the heirs of any deceased citizen allottee * * * who may die, or may have heretofore died, leaving restricted heirs, by the probate court of the state of Oklahoma having jurisdiction to settle the estate of said deceased, conducted in the manner provided by the law of said state for the determination of heirship in closing up the estate of deceased persons, shall be conclusive of said question, "subject to the appeal, etc., as provided. What does the act mean by the phrase, "shall be conclusive of said question"? What

question? Clearly it means to make the *determination conclusive of the question of heirship* when the proceedings are **"conducted in the manner provided by the laws of said state for the determination of heirship in closing up the estate of deceased persons."** There is no provision in the act of Congress for service of any process by publication or otherwise on any one other than **"unknown heirs."** As none of the defendants in this case claim to be heirs of Thomas J. Taylor, there is no authority under the act of Congress for serving any process on them, or either of them, nor does said act confer upon the county court any authority to pass upon their rights or in any way render any judgment or decree conclusive upon defendants. The judgment of the county court "shall be conclusive of said question", meaning conclusive of the question as to who are restricted heirs as between persons claiming to be heirs, and their privies, and by privies we mean persons whose claim arises by purchase or otherwise **after** the act of Congress was passed, as later on explained herein. This land, although Thomas J. Taylor, the unit *of allotment, was a full-blood Choctaw* Indian, was free from restrictions against alienation at the time defendants dealt with it and purported to acquire title through deeds from certain parties claiming to be the only heirs. Defendants took possession of the land under the deeds in 1904 and 1905, at a time when there was no law authorizing the county courts or any other **special** tribunal or federal agency to render any binding decree determining the heirship of Thomas J. Taylor, except the United States courts in the Indian Territory. At the time this land was allotted and at the time defendants purported to purchase it, and at the time defendants went into actual possession, it was free from all restrictions against alienation. Mullen v. United States, 224 U. S. 448; Skelton v. Dill, 235 U. S. 206; Adkins v. Arnold, 235 U. S. 417; Woodward v. Degraffenried, 238 U. S. 284.

If the heir, or heirs, of Thomas J. Taylor, deceased, was, or were, full-blood Indians and had not conveyed the allotment *prior to the act of Congress approved April* 26, 1906, then by virtue of section 22 of that act the alienation of the allotment became restricted.

In Talley v. Burgess, 246 U. S. 104, the court held that section 22 of the act of Congress approved April 26, 1906, imposed restrictions against the alienation of lands allotted to heirs as well as continued restrictions against lands inherited by heirs.

In Tiger v. Western Investment Co., 221 U. S. 286, the court had already ruled that section 22 of the act of 1906 continued restrictions against alienation by full-blood heirs; but that was a case where the land had been restricted at all times, whereas in Talley v Burgess the land involved was freed from restrictions prior to the act of April 26, 1906.

The act of Congress of June 14, 1918, applies only where the deceased allottee left "restricted heirs"—that is the plain language of the act. It is contended, however, that one of the purposes of the act was to authorize the court to determine the heirs so the government can distribute the tribal payments to the rightful claimants. Also it is suggested that there is no reason for distinguishing between a case where the heirs were originally restricted and where they became restricted by the act of April 26, 1906. On the other hand, defendants suggest that the act has no application to a case where the land was allotted to the heirs as distinguished from a case of technical inheritance. Defendants suggest that the heirship act only applies when three things occur, to wit: (1st) *Death*; (2nd) ownership of the property at the time of death; and (3rd) authority of the court to distribute property among heirs or legatees, and Fitzpatrick v. Simonson Bros. Mfg. Co., *86 Minn. 140, 90 N. W. 378, is cited.*

While the heirs of Thomas J. Taylor, technically speaking, did not inherit the allotment, it did come to them in the nature of an inheritance, for they had to be heirs of Thomas J. Taylor in order to take the land, and for the purpose of ascertaining, under the law of descent and distribution, who became his heirs, the land will be treated as having been inherited by his heirs. In applying the law of descent and in applying the provisions of section 22 of the act of Congress of 1906, no distinction is made between lands technically inherited and lands allotted to heirs, *except the descent is not cast until the allotment is selected*, as held in Sizemore v. Brady, 235 U. S. 441; McKee v. Henry, 201 Fed. 74, and several opinions by this court following that doctrine. Nevertheless, when the descent is cast this court has repeatedly held that the statutes of descent and distribution will be applied as if the deceased died seized of his allotment.

Ground v. Dingman, 33 Okla. 760, 127 Pac. 1078; Barnett v. Way, 29 Okla. 780, 119 Pac. 418; Ned v. Countiss, 84 Okla. 138, 203 Pac. 168. While this court, in Moffett v. Conley, 63 Okla. 3, 163 Pac. 118, said in the first paragraph of the syllabus that an allotment was under section 28 of the Original Creek Agreement to the heirs, passed to the heirs "by inheritance and not by purchase", an examination of the body of the opinion shows that what the court really holds is contained in this sentence: "It is not necessary that technically the land itself descended to the heirs, for it is sufficient to say that they took in the nature and course of descent."

In Moffett v. Conley, supra, this court said:

"In Washburn's Real Property, sec. 1824, it is said that in one thing all the writers agree, and that is considering that there are two modes only, regarded as classes, of acquiring title to land, namely, descent and purchase, purchase including every mode of acquisition known to the law except that by which an heir, on the death of an ancestor, becomes substituted in his place as owner by act of the law. Additional authorities in point are Hamilton v. Homer et al., 46 Miss. 378, 395; Hoyt v. Van Alystyne, 15 Barb. (N. Y.) 568; Watson v. Donnelly, 28 Barb. (N. Y.) 653; Ramsey v. Ramsey, 7 Ind. 607; Purcell v. Smidt, 21 Iowa, 540, 546; Estate of Donahue, 36 Cal. 329; Spielmann v. Kliest, 36 N. J. Eq. 199; Delaney v. City of Salina, 34 Kan. 532, 9 Pac. 271; Delay v. Chapman, 3 Ore. 459; Bouvier's Law Dict., vol. 3; Rapalje & Lawrence, Law Dict.; Black's Law Dict."

In Chupco v. Chapman, 76 Okla. 201, 170 Pac. 259, and King v. Mitchell, 69 Okla. 207, 171 Pac. 725, the statement is made that the heirs take by inheritance and not by purchase, but what was really intended was that while the heirs acquire title from the tribe, nevertheless it is in the nature of a descent. It is impossible to hold that the heirs take technically by descent, because no one can become an heir or acquire title by descent from a person who never had any title. If Thomas J. Taylor, or any other Indian, had any descendable title prior to selection of allotment, then it is impossible to hold that Congress had the power to change the law of descent after the death of the unit of allotment and prior to selection, and yet that is exactly what Congress has the power to do under the decision in Sizemore v. Brady, 235 U. S. 441. In that case the court expressly held that no title passed from the tribe to the deceased member of the tribe, or to the heirs of the deceased member, until selection was made, and that Congress had power at any time

prior to selection to change the law of descent, because there was no vested right. That the heirs got their title direct from the tribe cannot be disputed under the decision in Woodward v. Degraffenried, 238 U. S. 284, Franklin v. Lynch, 233 U. S. 269, Muller v. Pickens, 250 U. S. 590, and Sizemore v. Brady, 235 U. S. 441; but they received their title from the tribe in the nature of a descent from Thomas J. Taylor, because they acquired their rights through Thomas J. Taylor, as clearly held in McDougal v. McKay, 237 U. S. 372. The heirs received their title by virtue of the blood of their ancestor, Thomas J. Taylor. It did come by virtue of Thomas J. Taylor, and it is too narrow a construction of the act to hold that Congress has conferred jurisdiction on the county courts to determine heirship in cases of technical descent, but no jurisdiction in cases where the allotment was made direct to the heirs.

We do not think Congress had any such distinction in mind when it passed the act approved June 14, 1918. While the act, literally construed, only applies where the deceased allottee left **restricted heirs,** we think such construction is too narrow. We do not believe Congress had in mind the distinction between heirs taking technically by descent and heirs receiving an allotment by virtue of the rights of a deceased ancestor who died before receiving his allotment. We also think the act authorized the county court to determine heirship and render a judgment final and conclusive against all persons claiming to be heirs; that is, in cases where the heirs were originally restricted, or restricted by section 22 of the act of April 26, 1906. But at the time these defendants obtained their deed to the land from those claiming to be heirs and at the time they actually took possession of the land, it was unrestricted, and they had a right to buy the lands from the rightful heirs, and the question finally for determination is, who were the rightful heirs? That question must be determined as of 1904 and 1905 in so far as the defendants are involved are interested.

Who is going to determine that question? No court can determine that question without trying the title to the land. No ingenious reasoning can avoid the plain, obvious conclusion that the answer to the question "who are the heirs of Thomas J. Taylor?" determines whether these defendants are the owners of the land. Now, Congress has jurisdiction over restricted Indians and the restricted lands of tribal citizens, but has no jurisdiction over

these defendants. These defendants are not citizens of the tribe, not claiming to be, and if they purchased this title from the rightful heirs in 1904 and 1905 and went into possession, which is all admitted, they have the title and there is no res or thing over which the county court, either as a state agency or as a federal agency, can acquire any jurisdiction by administration or otherwise. The title to this land never having been in Thomas J. Taylor, it was not subject to his debts, whether restricted or unrestricted. Haun v. Martin (Ore.) 86 Pac. 371; Burns v. Hamilton's Adm'r, 33 Ala. 210; Gjerstadengen v. Van Duzen, (N. D.) 76 N. W. 233; Demars v. Hickey (Wyo.) 80 Pac. 520; Vance v. Burbank, 101 U. S. 514-521, 25 L. Ed. 929; Patawa v. United States, 132 Fed. 893.

Not being subject to administration on behalf of creditors, the land was not subject to administration proceedings after the heirs sold it, as there would then be nothing to administer. If the heirs conveyed the land to defendants in 1904 and 1905, the defendants acquired a valid title, the land being unrestricted and not subject to administration on behalf of creditors or the heirs after the conveyance. So defendants would have the unquestioned title if they purchased from the heirs. The power of Congress over restricted Indians, wards of the federal government, must not be confounded with the lack of federal government's power over defendants, who are not Indian wards of the federal government. In a suit commenced against defendants prior to statehood to recover the land, defendants would have been entitled to a trial by a jury under the 7th Amendment to the federal Constitution. Thompson v. Utah, 170 U. S. 341, 42 L. Ed. 1061; Northern Guaranty Loan and Trust Co. v. McCurtain, 31 Okla. 192, 120 Pac. 662; Pacific, etc., Ins. Co. v. Adams, 27 Okla. 496, 112 Pac. 1026; Choctaw Electric Co. v. Clark, 28 Okla. 399, 114 Pac. 730.

Section 19 of article 2 of the Oklahoma Constitution preserved the right of trial by jury, "according to the course of the law as it existed and the same in substance as that which was in use when the Constitution was adopted except as specifically modified by the provisions of the Constitution." Baker v. Newton, 27 Okla. 436, 112 Pac. 1034; Hale v. Marshall, 52 Okla. 688, 153 Pac. 167; Bilby v. Stewart, 55 Okla. 767, 153 Pac. 1173; Parker v. Hamilton, 49 Okla. 693, 154 Pac. 65. The constitutional right to a trial by jury is not a matter of procedure, but of substance, and one pos-

sessing such right cannot be deprived of it by any means short of an amendment to the Constitution. Slocum v. New York Life Insurance Co., 228 U. S. 364; Thompson v. Utah, 170 U. S. 343, 42 L. Ed. 1061; Tabor v. Cook, 15 Mich. 332; 24 Cyc. 109.

Section 12 of article 7 of the Oklahoma Constitution denies, to the county courts jurisdiction over any case wherein the title or boundary of land may be in dispute or called in question. In State ex rel. Miller v. Huser, 76 Okla. 130, 184 Pac. 113, this court. Pretermitted the question as to whether the determination of heirship by the county court involved the trial of title to land. That case was an application for a writ of prohibition, and therefore involved solely the question of jurisdiction of the county court to entertain a petition to determine heirs. The writ was denied on the ground that the county court was attempting to exercise jurisdiction as a federal agency under the act of Congress approved June 14, 1918. While, as said in the case, the county courts, proceeding under the act of Congress of 1918, are federal agencies "as distinguished from courts exercising strictly judicial powers," nevertheless the county courts exercise a jurisdiction of a judicial nature. They must determine the facts and apply the law in order to ascertain the heirs. In this effort, the county court must determine, first, as a question of fact, the degree of relationship existing between the deceased and certain surviving parties, and then, second, apply the law of descent to the given facts and by the application of the law to the given facts ascertain the heirs. This process involves more than a mere administrative or ministerial duty. It is an exercise of quasi judicial powers, and unless prohibited by the Constitution or statutes of the state from exercising the power conferred by the act of Congress, county courts may accept the jurisdiction and exercise it.

There is considerable difference between the jurisdiction of the county court under the heirship act of Congress of 1918 and the authority conferred by section 9 of the act of May 27, 1908, to approve full-blood heir conveyances. In approving conveyances by a full-blood heir the county courts exercise no judicial function, because, as said by Mr. Justice Kane in Tiger v. Creek, 45 Okla. 701-704, 146 Pac. 912, the approval of the full-blood heir's conveyance is "nothing more nor less than a sale of land from one person to another requiring the exercise of business sense and judgment." Whether the county court will approve a certain

conveyance of full-blood heirs involves no judicial question, but merely the exercise of good business sense and judgment, and therefore the county courts, in approving full-blood conveyances, merely act as administrative agents of the federal government, and exercise no judicial power of either the state or federal government.

Thus, in Cochran v. Blanck, 53 Okla. 317, 156 Pac. 324, this court said that the action of the county court in approving conveyances under section 9 of the act of May 27, 1908, "is not judicial in its nature, nor the exercise of any judicial function." See, also, In re Estate of Coachman (Molone et al. v. Wamsley), 77 Okla. 185, 187 Pac. 465, Buck v. Simpson, 65 Okla. 265, 166 Pac. 146, and Haddock v. Johnson, 80 Okla. 250, 194 Pac. 1077. We have no disposition to modify the holding in State ex rel. Miller v. Huser, supra, that "Congress had authority to make the county officers federal agencies and administrative, as distinguished from courts exercising strictly judicial powers", to determine conclusively heirship to restricted lands; that is, determine who are the restricted heirs of a deceased allottee. Congress not only has the power to constitute the county courts its agents to determine heirship to restricted lands, but may, in its discretion, take away that authority from county courts and confer it upon the Secretary of the Interior, or the Superintendent of Indian Affairs, or any other officer of the United States. But, as held by the United States Circuit Court of Appeals for the Eighth Circuit in McDougal v. Black Panther Oil & Gas Co., 273 Fed. 113, the jurisdiction of the probate courts under the act of congress of June 14, 1918, is "concurrent with the federal and state district courts of the question who were the restricted heirs of the respective deceased allottees described in the act." In other words, the federal district court in a proper case has authority to determine the heirs, and likewise the state district court in proper cases has jurisdiction to determine the heirs, and the act of Congress expressly recognizes that the state and federal district courts have at all times possessed that jurisdiction, because the act says, "but this proviso shall not be construed to reopen the question of the determination of an heirship already ascertained by competent legal authority under existing laws." As Congress had never undertaken to confer authority upon the Secretary of the Interior, or any particular federal agency, the only competent legal authority prior to the act of June 14, 1918, was the authority lodged in the state and federal district courts. In Re

Jessie's Heirs, 259 Fed. 702, the court cites a number of cases, state and federal, where the state and federal district courts have determined heirships in suits to adjudicate title to the land involved. Such suits may be brought against unknown heirs under section 4729, Rev. Laws 1910. American Land Co. v. Zeiss, 219 U. S. 47.

While there is nothing in the Constitution of the United States prohibiting Congress from vesting judicial power in courts and magistrates of a state or in executive officers, where the exercise of such power by them is a necessary or appropriate means by which to use powers of the federal government, as held in Levin v. United States, 128 Fed. 826, and by this court in State ex rel. Miller v. Huser, supra, neither of these decisions, nor any other, holds that Congress has the power to confer a jurisdiction upon a state court over a subject-matter which the Constitution of the state expressly prohibits the particular state court from exercising. In other words, if the Constitution of Oklahoma expressly prohibits the county courts from trying title to land, neither Congress nor the state Legislature has any power to confer jurisdiction on the Oklahoma county courts to try title to land. There are many authorities to the effect that the state courts must give due force and effect to the laws of the United States, but that means enforcement by a state court of some right created or conferred by the laws of the United States. To illustrate: A party acquires title to land under a law of the United States, and the state court will enforce his title; or a party acquires a right of action under the laws of the United States or one of the states, and if it be a personal and transitory action he may enforce it in the Oklahoma state courts if service of process can be had on the defendant in the jurisdiction of this state. Thus, the state courts will enforce the federal Employers' Liability Act, but no one would contend that the county courts of Oklahoma have jurisdiction to enforce the federal Employers' Liability Act in a suit for an amount beyond the jurisdiction of the county court, as defined by the laws of the state. This question is fully discussed in the able opinion of Chief Justice White in Minneapolis & St. Louis R. R. Co. v. Bombis, 241 U. S. 211, in which the court clearly holds that, while the state courts must enforce a right arising under the federal statute, that means the state court having jurisdiction over the subject-matter, as defined by the laws of the state. See, also, Walton v. Pryor, L. R. A.

1918E, 914, where the annotator discusses the whole question.

The heirship act of Congress of 1918 is an act for the administration of the estate where the allottee leaves restricted heirs, to the extent of ascertaining the heirs for the purpose of distribution. It does not purport to authorize the petitioner or the county court to bring in third parties not claiming to be heirs. There was no authority for making any of the defendants parties to the heirship proceedings other than those persons alleged to claim as heirs, and, therefore, the county court had no jurisdiction under the act of Congress to render any judgment or decree affecting or determining, directly or indirectly, the interest or rights of the defendants in this case, who claim to have acquired the title in 1904 and 1905 from the heirs. Having no authority to make any one a party not claiming to be an heir, the judgment of the couty court rendered in 1920, finding plaintiff to be the sole heir and defendants' vendors not the heirs, is not binding on defendants, whose claims accrued before the act of Congress, because no judgment is binding on a party unless he is a party to the judgment or a privy; in estate, it being well settled that "a party is not privy to a judgment involving property or a right unless he acquired his interest either after the suit is brought in which the title or right is involved, or after the judgment is rendered," as held by this court in Cressler v. Brown, 79 Okla. 170, 192 Pac. 417. See, also, Bank of Italy v. Burns (Nev.) 159 Pac. 863; Freeman on Judgments (4th Ed.) vol. 1, sec. 162; Village Mills Co. v. Houston Oil Co. (Tex. Civ. App.) 186 S. W. 785; 23 Cyc. 1153; Black on Judgments (2nd Ed.) vol. 2, sec. 549; Sills v. Ford (N. C.) 88 S. E. 636, and Carrol v. Goldschmidt; 83 Fed. 508.

We, therefore, conclude that the heirship act of Congress does not undertake to confer any jurisdiction upon the county courts to try title to land, and that the county court's judgment rendered under the authority of that act is binding on all persons claiming to be heirs and binding on all persons who purchased from alleged heirs after the institution of proceedings to determine heirship, but not binding on parties who purchased from alleged heirs prior to the passage of the act and at a time when the allotment was not subject to administration proceedings on behalf of creditors. But, as said in Edwards v. Kearzey, 96 U. S. 595-611, 24 L. Ed. 796, "The laws which exist at the time and place of the making of a contract, and where it is to be performed, enter into and form a part of it." We think any one purchasing from an alleged restricted heir after the act of Congress of June 14, 1918, although no heirship proceedings are then pending, takes subject to the power of the county court to determine the heirship; that is to say, one purchasing from an alleged restricted heir after the federal heirship act will be treated as having agreed that the county court may conclusively determine the heirship, subject to appeal, and that he, as purchaser and therefore privy to the alleged heir, will be bound by the judgment of the county court. This is on the theory, using the language of the court in Northern Pacific Railway Co. v. Wall, 241 U. S. 87, that "the laws in force at the time and place of the making of a contract, and which affect its validity, performance and enforcement, enter into and form a part of it, as if they were expressly referred to or incorporated in its terms."

But it is contended by the plaintiff in error that Senate Bill 60, being the act of the Oklahoma Legislature approved April 4, 1919 (Sess. Laws 1919, p. 41), confers jurisdiction upon the county court to bring in record claimants not claiming to be heirs. Inasmuch as the federal act of 1918 is not exclusive but concurrent with remedies in the federal and state district courts, as held by the Eighth Circuit Court of Appeals in McDougal v. Black Panther Oil & Gas Company, 273 Fed. 113, and inasmuch as section 6 of Senate Bill 60 declares that the method therein provided for determining heirship "shall not be exclusive, but shall be in addition to the method already provided by law", there is no difference between the two acts on that point. The federal act and Senate Bill 60 both provide for heirship proceedings "where the time limited by the law of this state for the institution of administration proceedings has elapsed without their institution, as well as in cases where there exists no lawful ground for the institution of administration proceedings in said court." This presents no difficulty under the federal act, because Congress has jurisdiction over the nation's Indian wards, and, further, because the federal act does not authorize the county court to take jurisdiction to adjudicate heirship except as between persons claiming to be heirs. The vital difference between the federal act and Senate Bill 60 is this: Senate Bill 60 authorizes a person claiming to be an heir or any record claimant of an interest in the estate to file a petition to determine heirship, and pro-

vides for service of process on "any record claimant to lands or any part thereof of which said descendant died seized" and service by publication on unknown heirs and unknown claimants. We have no doubt that the county court has jurisidiction to proceed under Senate Bill 60 to determine heirship (subject to appeal) as an incident to the administration of an estate, and enter a judgment binding on all the world, including all persons who purchased from alleged heirs, but that jurisdiction must be exercised in a case where there is **lawful** ground for administration proceedings in regard to the property in question. Therefore, if the allotment is subject to administration proceedings, and a person buys from the alleged heir, he takes it subject to the subsequent power of the county court to determine heirship and preclude him as a claimant through an heir. But we hold that where the land is not subject to administration proceedings on behalf of creditors and parties purchased the land from alleged heirs and went into possession, any proceedings in the county court undertaking to determine the heirship with a view to determining title to land is a proceeding to try title, and the act, in so far as it authorizes such a proceeding, violates section 12 of the Constitution and is unconstitutional. It appears in this case from the record that the land involved was not subject to administration proceedings under the state law, and the petition of the plaintiff in error filed in the county court of McCurtain county to determine heirship alleges in substance that the defendants here, and respondents in the heirship proceedings, were asserting title to the land, and the only effect of the proceeding was to determine if they had title to the land, "that it is not necessary to administer upon the estate of said Thomas J. Taylor other than to determine his heirship." Also further alleges "that petitioner is informed and believes that said parties claim to own some interest in said lands by purchase, by, through, or under or from some person, or persons, other than said Thomas J. Taylor, deceased, and that they, or some of them, claim to own some right, title, or interest in or to the lands of which the said Thomas Taylor died the owner of, as heirs at law of the said Thomas J. Taylor, deceased; that there are other persons claiming to own an interest in and to the property of which the said Thomas J. Taylor died the owner of, by, through, or under some person or persons claiming to be heirs at law of the said Thomas J. Taylor," etc., and prays that "all persons claiming an interest in or to the lands of which the said Thomas J. Taylor died the owner of, either as heirs at law, or record claimants by, through, or under any person or persons claiming to be an heir at law of Thomas J. Taylor, deceased, either immediate or remote, be required to submit to the court evidence as to who are the heirs of Thomas J. Taylor, deceased, and that upon the hearing the court determine as a matter of fact who are the heirs at law of Thomas J. Taylor, deceased. * * * and that the court determine as a matter of fact that the petitioner, Nicie Homer, nee Taylor, is the sole and only heir at law of the said Thomas J. Taylor, deceased, as of the time of his death." That petition clearly presented a case for the trial of title to land, and this court will not permit the provsions of the Oklahoma Constitution prohibiting county courts from trying title to land to be circumvented by the Legislature or by persons under the authority of any act of the Legislature.

Senate Bill 60 should be considered and construed in connection with House Bill 445, entitled "An Act to provide the manner of invoking jurisdiction" in matters concerning real property, approved April 4, 1919 (Sess. Laws 1919, p. 371), the same day Senate Bill No. 60 was passed and approved. House Bill No. 445 prescribes a procedure to be followed in the district courts for the determination of heirship in any case involving the title to land. House Bill 445 is applicable to this case, and furnishes the proper procedure to be followed in this case. It expressly applies to cases where a deceased member of one of the tribes died before receiving his allotment and the lands were allotted to his heirs. It makes provisions for cases where a man dies intestate, or testate, leaving property to a class such as nearest of kin or heirs at law without naming them, and authorizes the district courts to judicially determine who the heirs are and what interest and right and title each acquires. This determination is to be made "in any action which relates to or the subject-matter of which is such real property, or for the determination in any form of any interest, right, title or estate therein, or in which the relief demanded consists wholly or partly in excluding the defendants or any of them from any interest, right, title, or estate therein." This act provides for the determination of the beneficiaries, that is, the heirs or grantees, "where the grantees in any deed, or deed of patent made and issued are designated as 'the devisees' or 'heirs at law' or 'the legal representatives' of a named deceased person, without naming

them." House Bill 445 becomes operative in every case where "the period of three years or more years since the death of such intestate or testator has elapsed without there having been a decree of the county court of the county having jurisdiction to administer upon his estate, wherein it was judicially determined who the heirs are." We are not holding that House Bill 445 after a lapse of three years from the death of the intestate or testator becomes the exclusive remedy, as that question is not before us. There is no doubt that the county court can determine the heirs as an incident to the administration of an estate at any time the court acquires jurisdiction to administer. But the point is this: The parties cannot do in the county court what House Bill No. 445 authorized them to do in the district courts or superior courts. It is plain the plantiff in error in this case undertook to substantially follow in the county court the procedure prescribed by House Bill No. 445, and we hold the county court has no jurisdiction to follow that precedure or exercise the powers authorized by House Bill No. 445.

We, therefore, conclude:

(1) That where the deceased intestate or testator has been dead for a period of three years or more and there is no lawful ground for administration proceedings in the county court, an alleged heir or record claimant, desiring to have a determination of heirship and desiring to bring in third persons who are not heirs but who claim through alleged heirs, must proceed either under the act of Legislature approved April 4, 1919, House Bill 445, in the district or superior court by a suit in ejectment or bill to quiet title, as the circumstances mould the remedy.

(2) That under the heirship act of Congress approved June 14, 1918 (40 Stat. at L. 606), the county courts have jurisdiction to determine the restricted heirs of an allottee or a deceased member of one of the tribes to whom an allotment was made under section 22 of the Choctaw-Chickasaw Treaty approved by act of Congress July 1, 1902 (32 Stat. at L. 641).

(3) The heirship act of Congress approved June 14, 1918, does not authorize the petitioner or the county court in the heirship proceedings to bring in before the court any person other than a person claiming to be an heir of the deceased allottee.

(4) That the judgment of the county court (or the district court on appeal) in the proceedings authorized by the .act of Congress of June 14, 1918, is not binding on or res adjudicata as to any person claiming an interest in or title to the allotment acquired by a conveyance or deed or contract executed prior to the act of June 14, 1918.

(5) That part of Senate Bill No. 60 entitled "An Act to provide for determination of heirship in all cases of deceased persons," etc., approved April 4, 1919, attempting to confer jurisdiction on the county courts to render a judgment binding on record claimants, that is, persons who claim title to the land by purchase from heirs or alleged heirs, "where the time limited by law * * * for the institution of administration proceedings has elapsed without their institution, as well as in cases where there exists no lawful ground for the institution of administration proceedings in said court," violates section 12 of article 7 of the Oklahoma Constitution and is void.

(6) That the county courts of this state are without jurisdiction to enter a decree which in legal effect is determinative of the title of claimants in possession of real estate under deeds valid on their face, where such title was acquired while such land was not subject to administration but was in the possession of the grantors of such claimants asserting title. The Constitution of this state contains a plain limitation upon the jurisdiction of the county courts denying them jurisdiction to try or determine any proceeding wherein the title or boundaries of land may be in dispute or called in question. See Strawn et al. v. Brady, 84 Okla. 66, 202 Pac. 505; Jackson v. Porter et al., 86 Okla. 112, 209 Pac. 430.

For the reasons stated in this opinion, the judgment of the trial court is affirmed.

JOHNSON, C. J., and NICHOLSON, BRANSON, HARRISON, and MASON, JJ., concur. COCHRAN, J. dissents.